HEARD NOVEMBER TERM, 1874.

## STATE *vs.* McQUAIGE.

Exceptions for error, in overruling challenges for cause made by a prisoner on trial for murder, will not be considered where the jury was completed without exhaustion of the right of peremptory challenge.

It is a good ground of challenge to the array on the trial of a prisoner for murder, that the Jury Commissioner is a near blood relation of the deceased, and that he assisted at the drawing of the jury.

BEFORE TOWNSEND, J., AT MARLBOROUGH, MAY TERM, 1874.

John R. McQuaige, the prisoner, was under indictment for the murder of Robert J. Breeden, deceased; of the thirty-six petit jurors composing the original panel for the present term, five did not attend, and their places were supplied by five others summoned

from the by-standers. The panel being thus complete, the prisoner submitted, in writing, a challenge to the array, on the ground that the Jury Commissioner was a first cousin of the deceased, and that he assisted at the drawing of the jury.

The challenge was overruled, and the prisoner excepted.

Of the jurors, as they were called to be sworn, nine challenges for cause were made by the prisoner—two of which were allowed and seven overruled. Of the seven overruled three were challenged because they had married second cousins of the deceased—three because they were tenants, servants, croppers or employees of Joseph J. Breeden, the Jury Commissioner, who was a first cousin of the deceased, and one because he was a servant of P. L. Breeden, a first cousin of the deceased and brother of the Jury Commissioner. Of the seven jurors whose challenges for cause were overruled, one was accepted by the prisoner, and the other six peremptorily challenged by him. The prisoner made seventeen peremptory challenges in all.

In each case where a challenge for cause was overruled, an exception on behalf of the prisoner was taken to the ruling of the Court.

The prisoner was found guilty. He then moved the presiding Judge in arrest of judgment, on the same ground taken in his challenge to the array. His motion was overruled, and, after sentence, he appealed, on the ground of error in the Circuit Court: (1) In overruling his challenge to the array; (2) in overruling his challenges for cause; and (3) in overruling his motion in arrest of judgment.

*Hudson,* for the appellant, contended: (1) That the challenge to the array should have been sustained—Whart. Cr. Law, § 2, 948; 3 Black. Com., 359, 365; 1 Chit. Cr. L., 540; 3 Wait's Pr., 103; *Baylis* vs. *Lucas,* 1 Cowp., 102; and (2) that the challenges for cause should also have been sustained—Whart. Cr. Law, § 3016; Chit. Cr. Law, 541; *Harrisburg Bank* vs. *Forster,* 8 Watts, 304; 3 Black. Com., 363; 3 Wait's Pr., 105; *Churchill* vs. *Churchill,* 12 Verm., 661; *Armstrong* vs. *Timmons,* 3 Harring., 343; *The People* vs. *Bodine,* 1 Denio, 281.

*McCall,* Solicitor, contra, cited 1 Bish. Cr. Pr., §§ 763, 702; Whart. Cr. Law, §§ 2987, 3031; *State* vs. *Price,* 10 Rich., 356; *People* vs. *Ransom,* 7 Wend., 417; *Goodrich* vs. *Burdick,* 26 Mich., 39.

Dec. 15, 1874. , The opinion of the Court was delivered by

MOSES, C. J. It is true that. the system which exists in South Carolina, and probably in every State of the Union, for selecting a jury, as well for the trial of criminal as civil causes, differs from that which prevails at common law. Here the names of those who are authorized to act as jurors are prepared and placed in a box, from which they are drawn by the officer charged with that duty. At common law the jury is selected by the Sheriff from those qualified to sit, without regard to any designation by lot or chance.

Our Courts, however, have applied the same rules which have been established by English precedents for the government of those employed in the same high function, notwithstanding the essential difference which exists in the manner of its exercise. All the obligations which the common law imposes upon Sheriffs in the selection of juries are recognized in this State to their fullest extent, and will be enforced whenever the acts of those charged with the same duty are in question. The rights of parties in civil cases are in no way diminished by the change in the mode, and those accused by indictments are entitled to the benefit of any exception which would avail them under the common law system.

According to the existing law the process of preparing a jury list, and drawing juries from it in each County, is confided to a Board, consisting of a Jury Commissioner, to be appointed by the Governor and confirmed by the Senate, the Auditor and the Chairman of County Commissioners.—Gen. Stat., Ch. III, §§ 1, 3, 4. It is substituted in the place of the Sheriff and Clerk, who, before the change, were the officers upon whom the drawing of juries devolved, by the statutes and rules of Court which were then of force, in regard to their functions in that behalf. The mere difference in the mode of attaining the same end has in no way affected or disturbed the analogy, as to the results and incidents of the system now in use here and that which prevailed at common law, and we were not persuaded to the contrary by the argument on behalf of the State.

It is not necessary to consider the alleged error of the Court in not sustaining the exception of the prisoner to such of the jury as he challenged, because of their relation to the Commissioner, or to the deceased, by blood or affinity, or as being servants, tenants or employees of the Commissioner, and other relatives of the deceased, for, if it could avail him, he has lost its benefit by not exhausting

his peremptory challenges before the jury for his trial was complete.—*State* vs. *Price*, 10 Rich., 356. The principle so ruled proceeds upon the ground affirmed by the Supreme Court, in the *United States* vs. *Merchant*, 2 Wheat., 482, "that the right of peremptory challenge is not, of itself, a right to *select*, but a right to *reject* jurors." The same doctrine was announced in *The State* vs. *Wise & Johnson*, 7 Rich., 413.

But the objection that the Court refused to sustain the challenge to the array must prevail. The obligation resting on one engaged in drawing a jury involves a duty of such a high, important and delicate character, that its exercise must be free even from a suspicion of partiality. It is true that no charge of wrong is imputed to the Commissioner. Courts must be governed by general principles. It is better for the community that a definite and established rule should prevail, not affected by any condition or provision, to be applied by any inquiry as to intention or motive, the ascertainment of which is almost impossible, save through the oath of the party whose act may be the subject of challenge and examination.

It would be but a loss of time, which, under the pressure of business before us, we could not afford, to refer to the many authorities which may be found, sustaining a challenge to the array, if the officer making the return is a blood relation of either of the parties, or in a position, in regard to the deceased, which must necessarily subject him to a feeling, at least, of prejudice against one charged with his murder. It is sufficient to refer to the words of Blackstone, at the 365th page of his third volume. No Judge who ever adorned the English bench more justly prized the value of the trial by jury than did this eminent jurist and commentator. In extolling "the constitution and frame of the tribunal, which the law of England has provided for the test and investigation of truth," he includes, among its "remarkable" incidents, "its caution against all partiality and bias, by quashing the whole panel or array, if the officer returning is suspected to be otherwise than indifferent." A principle, whose foundation rests upon natural justice, and whose effects, in its practical results, can never conduce to wrong—a rule so long recognized as one of the safeguards of jury trial—must not be abandoned without reason, and, least of all, must it be shorn of any of its efficacy, when applied to a case involving human life.

It is urged that the objection "is not well taken, because the deceased cannot be said to be directly or indirectly a party to the

action." A wise and humane provision of the law cannot be controlled by so narrow and contracted a limitation. If there ever is an occasion for its enforcement, it is when the officer stands in near relationship to the deceased. All the reasons which recommend it, as between parties to the record, in a civil cause, apply with greater force where the impulses of nature restrain the free exercise of impartiality. The books, too, make no distinction, and if the Sheriff, or other officer officiating in drawing a jury, is a blood relation to the deceased, it is ground of challenge to the array.

In fact, too, there was not the least necessity for the Jury Commissioner to exercise, on the occassion referred to, the functions of his office. He may well have refrained, and, without his action in the matter, the jury could have been lawfully drawn. By Act No. 544, approved March 14, 1874, Section 3, (15 Stat., 638,) amending the former Act, a majority of the three persons named as Jury Commissioners "shall," in the language of the statute as amended, "constitute a Board."

The motion for a new trial is granted, and the case remanded to the Circuit Court for Marlborough.

*Wright*, A. J., and *Willard*, A. J., concurred.