## STATE v. ANDERSON.

1. Where the prisoner at the bar completes his jury without exhausting his challenges, he cannot except to errors of the judge in excluding or presenting jurors.
2. Believing that the panel was exhausted, the trial judge ordered six additional jurors drawn, but after the drawing of one of them it was discovered that one of the original panel had not been called.   Thereupon this juror was presented, the former order was revoked, and a new order for additional jurors was made.   *Held*, that in this there was no error.
3. One of these additional jurors being in the court room, he was not summoned by a writ of *venire*.   He was presented to the prisoner, accepted, and sworn.   It was too late afterwards to object to the manner of his appearing.
4. In stating and explaining the testimony to the jury, without indicating his own opinion upon the facts in issue, the trial judge does not charge upon the facts.
5. Failure to charge upon matters not requested, is not error of law.
6. There was no error in permitting the prosecution to prove threats made by the defendant after the homicide, and that there was bad blood between the prisoner and the family of the deceased.

Before PRESSLEY, J., Edgefield, November, 1886.

The reporter has been furnished with no papers in this case, except the opinion of this court.

*Mr. S. McG. Simkins*, for appellant.

*Mr. Nelson*, solicitor, contra.

June 23, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The appellant was indicted and tried for murder at the November term of the Court of General Sessions for Edgefield County, 1886. He was convicted of manslaughter. In the organization of the jury, after the regular panel had been exhausted, as it was supposed, the State having objected to two and the prisoner to fourteen, eleven having been accepted by the prisoner, in order to fill up the supposed deficiency, his honor, Judge Pressley presiding, ordered six names to be drawn from the "seven mile box," in order to have them summoned. One name was drawn out, to wit, A. H. Smith. Just at this time the counsel of the prisoner announced to the court that the regular panel had not been exhausted; or, rather, that the name of W. B. Lowry, one of the regular jurors, had not been put in the hat, or at least had not been called. On investigation it was found that this name had been in the hat, but in some way had fallen out and was found in a spittoon. Prisoner's counsel then objected to this juror being presented; the judge overruled this objection, which was excepted to. Prisoner's counsel then objected to A. H. Smith being drawn as a juror, because he was drawn from the "seven mile box" before the panel was exhausted. The court ordered his name to be put aside, and then directed a drawing of ten names from the tales box, &c. Upon this drawing, the name of one James Pool was drawn out about the third, and Pool answering, the prisoner accepted him, which completed his jury. His honor thereupon announced that this killed the objection made in reference to Lowry, above.

The jury having been empanelled, the trial proceeded, and, as stated above, the appellant was convicted of manslaughter, and his motions in arrest of judgment and for a new trial having been overruled, he has appealed, alleging error to the judge: 1st. Be-

cause of his ruling in reference to the juror, Lowry.    2nd.  Because the order to draw six jurors from the tales box was quashed, and a new order substituted for ten.    3rd.  Because James Pool was allowed to serve .without a *venire* having issued for his attendance.    4th.  Because his honor charged upon the facts.    5th, 6th, 7th, 8th, and 9th.  Because his honor failed to define the crime charged, and to explain the law of self-defence fully, &c. 10th.  Because his honor held that threats made by the defendant after the homicide could be received and weighed by the jury. And 11th.  Because he erred in holding that it was competent to prove that bad blood existed between the defendant and the family of the deceased, instead of confining the evidence to bad blood as to the deceased.

We think that the cases of *State* v. *Price* (10 *Rich.*, 356); *State* v. *McQuaige* (5 *S. C.*, 431); *State* v. *Gill* (14 *Id.*, 412); and *State* v. *Dodson* (16 *Id.*, 460), are conclusive of the first exception.    In those cases it was held that where the prisoner completed his jury without exhausting his right of challenge, that this cured any error on the part of the judge in excluding or presenting a previous juror.    This was decided upon the ground that the right of challenge was not a right to select, but to reject (*State* v. *Wise & Johnson*, 7 *Rich.*, 413); and where he completes the jury before exhausting his right of challenge, this shows that he has not been deprived of this right to reject, which the law allows him, and consequently there has been no error.

Neither was there error in suspending the order .to draw six. jurors from the tales box and substituting therefor an order to draw ten, after it was discovered that the regular jurors had not been exhausted from the hat.    Under the act of the legislature upon this subject (section 2255 of General Statutes), whenever it shall become necessary to supply any deficiency in the number of jurors, grand or petit, duly drawn, whether exhausted by challenge or otherwise, it becomes the duty of the jury commissioner, &c., under the direction of the court, to draw from the tales box such number as may be sufficient to fill said deficiency.    In this case, when the first order was given to draw six, it was supposed by his honor and all concerned, that the regular panel had been exhausted, leaving a deficiency, and said order was made.    Be-

fore, however, more than one name had been drawn, the mistake above was discovered, and to rectify this mistake, this order was revoked, and then after the name of Lowry was drawn from the hat, or at least presented as having been in the hat, his honor gave the second order. This, it seems to us, was exactly in accordance with the act. The first order was erroneous, because of the fact that the regular jurors had not been exhausted, which was the contingency necessary to resort to the tales box. This fact was discovered before said order was executed, and the judge after this discovery very properly gave the second order.

Nor was there error in allowing Pool to serve without being summoned under a regular *venire*. He seems to have been in court when his name was drawn and called. He was accepted and sworn in. It is too late now to interpose the objection made.

4th. Because his honor charged upon the facts in violation of art. 4, section 26, of the Constitution. A violation of this provision of the constitution does not consist in reading the testimony to the jury, nor in stating it to them orally, nor in presenting it to them in a connected and logical manner, showing its pertinency to the questions of law involved; but it consists in stating the opinion of the judge as to whether the disputed facts have been proved either expressly or impliedly, and in such way as to show clearly the conclusion of his mind as to such facts; or by making remarks in his general comments upon the evidence, intended, or tending, to lead the jury to conclusions of fact arrived at by the judge. It was, no doubt, the purpose of the constitution to leave the facts in a jury case solely and entirely to the jury, excluding absolutely the influence of the judge upon said facts, and to this end all indication of the opinion of the judge was intended to be inhibited by the section above. Whenever, then, the judge stops short of presenting his own opinion, whatever may be his mode of presenting the evidence, his charge cannot be said to be obnoxious to constitutional inhibition. *State* v. *White*, 15 *S. C.*, 392; *State* v. *Jenkins*, 21 *Id.*, 595; *Woody* v. *Dean*, 24 *Id.*, 505; *State* v. *Smalls*, *Ibid.*, 591. It is the expression of an opinion or an unmistakable indication thereof in the manner in which the testimony may be presented or discussed by the judge as to some

material disputed fact, that gives a valid foundation for an exception under the constitution.

Now apply this rule to the charge. Appellant's counsel has very fully presented in his argument the portions of the charge to which he objects. We have carefully read and considered these extracts. The first objection refers to what his honor said as to the testimony of Watson and Rodgers. His honor asked if these two witnesses tallied in their evidence, and stated to the jury what each said. It was not objectionable to say to the jury, or to imply, that if they corroborated each other, this was a matter to be considered in reaching their conclusion; and to enable them to compare their statements, he stated their testimony, without indicating his own opinion. And as to the point that Watson had mistaken the time, he presented to them a calculation by which they could judge of this matter. As to the dying declarations of the deceased. These he had admitted as competent upon a sufficient showing to him, the question of competency being entirely for him; and when he came to charge, we do not see that he said anything as to the truth of these declarations, but what he said was rather in the nature of showing the ground upon which he had admitted said declarations. Nor do we think that he violated the rule in explaining to the jury the plat of the ground where the deadly conflict took place, which had been introduced. This explanation did not indicate any opinion of his as to the homicide, or its character.

The appellant further objects that his honor failed to charge the law fully as to the crime charged, or as to the law of self-defence, and that while he commented fully upon the testimony of the prosecution, he overlooked the testimony of the defence. It is impossible to lay down any rule for the government of the trial judge, specifying distinctly what his charge shall contain, and the manner in which he shall present the law of the case to the jury. All this must be left to him, with the right in either party to request such propositions as they may deem necessary; and in the absence of requests, we do not know that an exception for failure to charge in a certain way can be sustained. *State* v. *Smith,* 10 *Rich.,* 341; *McPherson* v. *McPherson,* 21 *S. C.,* 273. Here there were no requests on this subject, except such as the

judge allowed with qualifications, either as to charging certain propositions or as to the necessity of calling the attention of the jury to defendant's testimony. Some of the requests involved to some extent the law of self-defence, and they were responded to properly.

There is nothing in exceptions 10 and 11 as to the admission of threats after the homicide, or as to bad blood existing between defendant and the family of the deceased, demanding a new trial. This testimony, in so far as it came in, seems to have been properly qualified.

This appeal comes before us in a "Case" *voluminous*, and in manuscript, and we have found much difficulty in examining it. We do not think, however, that we have overlooked any material point or question raised.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.