## STATE v. WILLIAMSON.

1. JURORS—DISCRETION.—Whether a juror is indifferent, is exclusively for the Circuit Judge, except when his conclusion is wholly without evidence to support it. Jurors held competent by trial Judge, who

said that it would require evidence by defendant to remove their impressions, although not sensible of any bias.

2. WITNESS—EVIDENCE—CROSS-EXAMINATION.—For purpose of testing the credibility of a defendant in a criminal case as a witness for himself, he may be asked on cross-examination if he had not been indicted for perjury, without production of the record.

3. PRACTICE—ARGUMENT.—SOLICITOR should be required by the Court to keep his argument within the rules governing fair and legitimate argument, but this Court only interferes when there is manifest abuse of discretion, which is not shown here.

4. ASSAULT AND BATTERY.—It is not error to define assault and battery by instructing the jury that if under the circumstances the prosecutor had died as a result, it would have been murder.

5. CRIMINAL LAW—VERDICT.—Where three persons are indicted together, and by reason of finding of grand jury, trial is ordered to proceed as to two only, a verdict, "Both guilty," is not uncertain or indefinite.

Before WATTS, J., Greenwood, March term, 1902.    Affirmed.

Indictment against Henry R. Williamson, Charley Snow and Anthony Reeder.    From judgment on verdict of guilty, defendants, Williamson and Snow, now appeal.

*Messrs. Graydon & Giles* and *Wm. N. Graydon,* for appellant.    *Mr. Ellis G. Graydon* cites: *Jurors not competent:* 16 S. C., 453; 20 S. C., 444; 25 S. C., 171; 26 S. C., 198; 31 S. C., 257; 32 S. C., 45; 34 S. C., 33; 36 S. C., 504; 39 S. C., 97; 54 S. C., 147.    *Error to allow solicitor to ask defendant if he had been indicted of perjury:* Con., art. I., sec. 17; Crim. Code, 64.    *Solicitor applied improper epithet to defendants:* 33 S. C., 582; 34 S. C., 16; 35 S. C., 197.    *Definition of assault and battery with intent to kill error:* 2 Ency., 2 ed., 967 *et seq.;* 60 Ala., 441; 65 Ind., 39; 32 Id., 220; 45 Ala., 43; 80 Cal., 41; 39 La. Ann., 912; 59 Ala., 1. *Verdict too uncertain:* 22 Ency. P. & P., 888; 9 Rich., 168.

*Assistant Attorney General Gunter,* contra (oral argument).

February 19, 1903.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    The defendants, Williamson and Snow, were indicted for an assault and battery with intent to kill one J. H. Werts, and now appeal from the judgment and sentence rendered upon the verdict against them.

1. The first six exceptions complain of error in not excluding as incompetent certain jurors who, when examined upon their *voir dire,* said they had formed and expressed their opinion as to the guilt or innocence of the accused, and that it would require evidence on the part of the defendant to remove that impression from their minds.    Section 2944, Code 1902, provides, the Court, on motion of either party to suit, shall examine any person called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; and further provides, that the juror shall be placed aside, "if it appears to the Court that the juror is not indifferent in the cause."    Numerous cases from *State* v. *Dodson,* 16 S. C., 459, to *State* v. *Robertson,* 54 S. C., 151, construing the statute, declare that it invests the Circuit Court with exclusive power to determine whether a juror, after examination on his *voir dire,* is indifferent in the cause. Whether a juror is indifferent in the cause is a question of fact which is not reviewable in this Court, unless perhaps it should appear that the conclusion of the Circuit Court is wholly without any evidence to support it.    In this case, while it is true the jurors when examined said they had formed or expressed an opinion as to the guilt or innocence of the accused, and that it would require evidence to remove that impression from their mind, they also declared that they were not conscious of any bias or prejudice for or against either of the defendants, and would decide the case according to the evidence, uninfluenced by such opinion.    It cannot, therefore, be said that the conclusion of the Circuit Court was without *any* evidence to support it.    We do not think

that any error of law was committed as complained in these exceptions.

2. While the defendant, Charlie Snow, was on the stand as a witness, the solicitor asked him if he had not been indicted at Newberry for perjury. Defendant's attorneys objected to the question on the two grounds that it was improper to impeach the character and testimony of the defendant in that way, and that the record was the best evidence. The Court allowed the question to be asked, and the defendant refused to answer it. This ruling is the basis of the seventh exception, which assigns error therein "(a) in attempting to prejudice the jury against defendant, whether he was convicted or not; (b) in trying to prove a record by parol evidence." A defendant in a criminal case cannot be compelled to be a witness against himself, as declared in art. I., sec. 17, of the Constitution—*Town Council* v. *Owen,* 61 S. C., 24; but if he desires to testify in his own behalf, he shall be allowed to do so, under the provision of section 64, Criminal Code; and when he voluntarily elects to be a witness in his own behalf, he thereby assumes the position of any ordinary witness. *State* v. *Robertson,* 26 S. C., 117; *State* v. *Wyse,* 33 S. C., 582; *State* v. *Merriman,* 34 S. C., 39; *State* v. *Turner,* 36 S. C., 540. While it may be true that a defendant, by taking the stand as a witness, does not thereby permit his general moral character to be impeached, he does thereby put in issue his character for truth and veracity, and is subject to the rules which govern the cross-examination of ordinary witnesses in testing credibility. *State* v. *Mitchell,* 56 S. C., 532. Every witness, of course, is privileged from answering any question tending to criminate himself, but no question of privilege is involved here, as no objection on the ground of privilege was interposed to the question of the solicitor, and the defendant, in fact, refused to answer the question, and no effort to compel him to answer was made. It will be further observed that the question was not objected to as irrelevant, on the ground that a mere indictment for

perjury would not tend to show that defendant was not veracious. The specific objection urged in the exception is that the question sought to prove a record by parol. To this two answers may be given: first, that no legal prejudice has been suffered, as the question was not answered, and no parol testimony to prove a matter of judicial record was, in fact, received; and second, the question was competent, under the rules governing cross-examination. It would be competent, when a defendant becomes a witness in his own behalf, for the purpose of impeaching his credibility, to show that he had been indicted and convicted of perjury. If it were sought to do this by independent evidence, it would be necessary, on objection made, to produce the record of conviction; but more latitude is allowable where the defendant himself is cross-examined as a witness touching such charge and conviction. In Wharton's Criminal Evidence, sec. 474, the author says: "In this country there has been some hesitation in permitting a question, the answer to which not merely imputes disgrace, but touches on matters of record; but the tendency now is, if the question be given for the purpose of honestly discrediting a witness, to require an answer." In this case, the question was merely permitted, subject to. the defendant's claim of privilege from answering. In the case of *Clemens* v. *Conrad,* 19 Mich., 170, over an objection that the testimony involved a matter of record, a witness was required to answer if he had not been indicted and convicted of a criminal offense, and Judge Cooly, speaking for the Court, said: "We think the reasons for requiring the record evidence of a conviction have very little application to a case where the party convicted is himself upon the stand, and is questioned concerning it with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight that it may be looked upon as purely imaginary, while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record

evidence of their infamy, is always palpable and imminent." It is true, this language was applied to a case when the witness cross-examined was not a defendant, and it may be said that the State's attorney shall always be prepared to expect the defendant to take the stand. In the case of *Wilbur* v. *Floyd,* 16 Mich., 40, where the defendant was sworn as a witness, the Court held it allowable on cross-examination to ask the witness whether he was ever confined in a State prison, and among the reasons given the Court said: "It is not very easy to conceive why this knowledge may not be as properly derived from the witness as from other sources. He must be better acquainted than others with his own history, and is under no temptation to make his own case worse than the truth will warrant. There can, with him, be no mistaken identity. If there are extenuating circumstances, no one else can so readily recall them." The general rule as to cross-examination is thus stated in Stephens' Digest of the Law of Evidence: "When a witness is cross-examined, he may be asked any questions which tend (1) to test his accuracy, veracity or credibility, or (2) shake his credit by injuring his character." The extent of a cross-examination is very largely intrusted to the discretion of the trial Court. Subject to this discretion and subject to the right of a witness to decline to answer any question tending to criminate himself, the scope of the cross-examination is unlimited, when its purpose is to test the credibility of the witness.

3. The solicitor in his closing argument to the jury spoke of the defendant, Williamson, as a thug, an assassin and a cowardly cur, and of the defendant, Snow, as a perjurer. The defendants' attorneys asked the Court to stop the solicitor from indulging in the use of such epithets, on the ground that the solicitor is in law the counsel of the accused as well as of the State, and has no right to abuse a defendant who is on trial, but the Court refused to interfere. The 8th and 9th exceptions complain of this as error. In the case of *State* v. *Robertson,* 26 S. C.,

118, the Court said: "It is most certainly proper, especially in criminal cases, that counsel in addressing a jury should keep themselves strictly within the record. This rule is essential and must be enforced; but from the very nature of the case, some latitude in argument must necessarily be allowed. It is often a matter of difficulty to draw the line sharply between legitimate argument and unauthorized statement—between what is and what is not allowable, and as this pertains to the conduct of the cause, it must to a large extent be left to the wise discretion of the Circuit Judge. We could not affirm that the omission of the Circuit Judge to restrain the solicitor in his argument was such error of law upon his part as to authorize this Court to set aside the verdict on that ground." It is undoubtedly the duty of the Circuit Court, when appealed to, to repress any flagrant breach by counsel of the rules governing fair and legitimate argument and for manifest abuse of discretion in this regard from which it was probable that defendant was prejudiced, this Court would set aside the verdict. But we cannot say there was any abuse of discretion in this case. The testimony taken is not set out in the case, and we cannot say that there was no testimony in the case which might have made tolerable the rather severe language of the prosecuting attorney, as a matter of inference and argument. It is stated in the case that "the evidence by the prosecutor and the other witnesses for the State was to the effect that the defendant, Charlie Snow, held the prosecutor, while the defendant, Henry R. Williamson, gave him a severe whipping with a leather strap." We are not to be understood as justifying or commending the use of such epithets by a prosecuting attorney in characterizing the conduct of the defendants. We only say it was incumbent on appellants to show manifest abuse of discretion in reference thereto by the Circuit Court, and that such has not been shown.

4. The 10th, 11th, 12th, 13th, 14th, 15th and 16th exceptions assign error in the charge to the jury and refusal to charge with respect to the law of assault and battery with

intent to kill. The Court charged the jury: "Now, in order to make out a case of assault and battery with intent to kill, the circumstances attending the battery must have been such that if death had ensued as a result, it would have been murder." The defendants' counsel requested the Court to charge: "That unless the jury find from the evidence that the defendants intended to kill Werts, then they cannot find a verdict of guilty, no matter how much malice defendants may have had towards Werts." In reference to this, the Court said: "I charge you that as a good proposition of law, with this modification: that where one deliberately, intentionally, does an unlawful act maliciously, and death follows from such act, if the party acted under those circumstances, he would be responsible for the consequences of his act; and if death had ensued as a deliberate result of a malicious act towards Mr. Werts at the hands of the defendant here, then they would be responsible for the consequences of that act." The specification of error is: "That said defendants were entitled to have the jury charged that in an action for assault and battery with intent to kill, the State must show that the defendant intended to kill and murder the prosecutor, either by positive evidence of a specific intent to kill, in cases where a non-lethal weapon is used, or by a presumption of such intent from the deliberate use of a deadly weapon." The contention of defendants' counsel is thus stated by him: "We submit that the question is, not what intent might have been imputed to a defendant if the person assaulted by him had died, but what intention did he have in committing the assault? As almost any assault may result in death, his Honor's charge would make every assault and battery an assault and battery with intent to murder. It makes every man intend, not only the consequences that flow from his acts and those that would naturally and probably flow from them, but those which may possibly flow from them, and which he never intended to result. If a lethal weapon is used, of course, the jury would have the right to infer the intent to kill from its mere use. Our contention

is, that the jury must find from some evidence, either direct or inferential, that the defendant in a case of this kind actually had the specific intent to kill and murder." We do not think the charge is subject to the objection thus urged, nor was it erroneous. In the case of *State* v. *White,* 21 S. C., 597, this Court approved as correct a charge of the Circuit Court made in this language: "That perhaps the best test by which to determine the first grade of the offense, assault and battery with intent to kill and murder, would be to apply the testimony which they had heard to the case as if an actual homicide had occurred. And if from the testimony they would be satisfied beyond a reasonable doubt that if death had ensued in this case, the defendant would be guilty of murder, then it would be their duty to find him guilty of assault and battery with intent to kill and murder." The charge substantially placed before the jury in this case the same test. In modifying defendants' request, the Court did not in any way intimate to the jury that it was not essential in order to convict under the indictment, that the jury should find both elements of the offense, the assault and battery and an intent to kill. On the contrary, the charge made it incumbent on the jury before convicting to find that defendants intended to kill. While an intent to kill is usually shown by the use of a deadly weapon, still an assault and battery with intent to kill may be shown by the use of a weapon not in itself deadly, but used under circumstances from which an intent to kill may be inferred. In the case of *State* v. *Shaw,* 64 S. C., 566, 43 S. E. Rep., 14, wherein the defendant was found guilty of murder, in chastising a boy in his employ with a leather strap in so excessive a manner as to cause his death, the Court would not disturb the verdict, because the facts and circumstances surrounding the homicide were such as to warrant it being submitted to the jury to determine whether the defendant intended to take the life of the boy. In this case, all that the Circuit Court meant in the charge complained of was to leave it to the jury to determine from

all the circumstances whether the defendant intended to take life.

5. The last point raised is that "the verdict was too uncertain to base a judgment upon, there being three defendants named in the indictment, and it being, therefore, necessary that the jury should have named the defendants convicted by them, and there being nothing in the record to show which defendants of the three named in the indictment were convicted." The indictment charged Henry R. Williamson, Charlie Snow and Anthony Reeder with an assault and battery with intent to kill J. H. Werts. The grand jury found a true bill as to defendants, Williamson and Snow, and a true bill for a simple assault as to the defendant, Reeder. The Court ruled that it did not have jurisdiction of simple assault, and ordered the trial to proceed as to Williamson and Snow, the appellants. The verdict of the jury was "Both guilty, John L. Cook, foreman." Thus the records of the Court showed that only Williamson and Snow were on trial, and there is no reason for doubt as to whom the verdict related.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.