Tony Vallero, Respondent, *v.* Turner & Blanchard, Inc., Defendant, Impleaded with Standard Oil Company of New Jersey, Appellant.

First Department, November 29, 1929.

*John P. Carson* of counsel [*William A. Earl*, attorney], for the appellant.

*Jacquin Frank* of counsel [*David M. Fink* and *Jacquin Frank*, attorneys], for the respondent.

McAvoy, J. Plaintiff recovered a judgment for over $5,000 upon a verdict in his favor for damages for personal injuries caused by the negligence of the defendant Standard Oil Company of New Jersey. He was injured in November, 1923, some time in the morning, while working as a longshoreman in a hatch of a steamship which was moored at a pier at Bayonne, N. J. Plaintiff was an employee of a concern known as Turner & Blanchard, Inc., and

appellant had no employees engaged in the work which plaintiff was doing, except the man who operated the winch, which was situated on the pier and owned by the defendant. Plaintiff and his fellow-employees were loading cases of oil on the steamer. Each draft contained eight cases, and there were two five-gallon cans in each case.

The draft was placed in a rope sling and then elevated by a movable boom to the height of the vessel, where there was a gangwayman — a fellow-employee of plaintiff — who controlled the movement from side to side, by means of a rope. When the load was to go inshore, he was required to pull on the draft with his rope; when it was to be loaded offshore, he gave it slack. The swing of the draft when it came above the skid of the ship was toward the other side of the steamer, or offshore. When the draft reached a point over the hatch where the gangwayman was standing, if he wished to lower it he signaled to the winchman to lower the draft and when it was to stop.

A marker was tied to the lowering rope, at which point the gangwayman would bring it to a stop again.

The winchman's operation related solely to moving the draft, either by raising it or lowering it. When the draft was lowered into the hold it was landed by a longshoreman on a truck to move it to the place of stowage. The longshoreman guided this truck with his feet, in order to place it directly underneath the draft as it descended.

Plaintiff was operating one of these trucks which was about three and a half to four feet long, and about two and a half feet wide. The draft was an inshore load, and the winchman had lowered it down and the gangwayman had given the necessary movement on his rope. The winchman, according to the gangwayman, "let the draft go down all of a sudden," the negligence charged being that the winchman brought the draft to a stop at one time about the place indicated by the marker, and thereafter dropped the draft with such force that it struck a truck, which, in turn, struck the plaintiff.

Plaintiff had pleaded in his complaint that the draft was caused to swing against plaintiff, striking him and knocking him down; but he was permitted to amend on the trial so as to change to a " dropping all of a sudden," instead of a " swinging of the draft."

The gangwayman testified in accordance with this amendment, and another witness also gave similar testimony, as did the plaintiff.

The defendant based its defense on proof that the accident did not occur as testified to by plaintiff and his witnesses, but that it happened as charged in plaintiff's original complaint, i. e., that

the draft was caused to swing against plaintiff, striking him and knocking him down; or happened, as indicated in a statement signed by plaintiff five days after the accident and placed in evidence by defendant. This statement says: " I was working in No. 4 hatch corner hold of the SS. ' New Toronto,' loading, and at 10 A. M. a draft of 8 cases came down and I landed it on a hand truck. As I did so, the truck skidded and one end came up and struck me on the right knee."

This statement was obtained from one Ruddy, who was an adjuster for an insurance company that insured plaintiff's employer under the Workmen's Compensation Law. Ruddy had the duty of sending out investigators to obtain information about accidents causing injuries to employees of policyholders. A subpœna brought this record into court. The statement was witnessed by one Mollie Rubino, a daughter of plaintiff, whose signature was conceded by plaintiff. She spoke both Italian and English.

The winchman was an employee of defendant for twenty-eight years, and operated the winch at the time of the accident. He said that at no time in November, or at any other time, did the winch, while operating with a draft attached to it drop down into the hold at a rapid rate of speed. His testimony was that no such thing ever happened. He had never heard that plaintiff was injured, and Bellotto, the gangwayman, testified that, although he was giving this testimony about the draft dropping into the hold he worked in on that day, he said nothing to the winchman. Neither did Lauro, the other witness, talk to anybody on the pier about the matter that day. Although the draft was said to have fallen six feet, Lauro said that the cases did not break or open.

There were three versions of this accident given by plaintiff: (1) In his original complaint, (2) in his statement five days after the accident, which may not have been understood by him, and (3) the one given at the trial under the amendment.

The defendant asked the court to charge, when the proof was all in, that " if this accident happened substantially in the way as described in the plaintiff's statement (Defendant's Exhibit B) the defendant is entitled to a verdict." This was declined, and the counsel then requested that the court charge that if the accident had happened as described in the original complaint, i. e., by the swinging of the draft, the plaintiff could not recover. This was at first declined, and then, on plaintiff's consent, was charged by the court, although the court was apparently willing to charge that the plaintiff could not recover if the accident happened substantially in the way as alleged in plaintiff's complaint as amended, which was the basis of the submission to the jury in the charge.

Obviously there was a confusion in the court's mind as to the nature of the requests, or the nature of the proof. It was error, however, for the court to refuse to charge the jury that if the accident happened substantially as described in plaintiff's statement given five days after the accident, the defendant was entitled to a verdict.

The accident occurred November 17, 1923. The complaint was verified March 18, 1924. Plaintiff had talked to his attorney about the matter through an interpreter; all the witnesses stated that, whenever they talked to plaintiff's counsel in regard to the matter, they always had an interpreter.

The theory advanced by the defendant that if the accident happened as stated in plaintiff's statement, signed five days after the accident and witnessed by his daughter, which stated that the draft of eight cases came down and plaintiff landed it on a hand-truck, and as he did so the truck skidded and one end came up and struck him on the right knee, there was a complete contradiction in that version of plaintiff's proof on the trial on the theory of a sudden dropping of the draft, and it was highly important for the defendant to obtain the benefit of this request, because of the fact that defendant apparently had nobody in position to testify as to the circumstances of the accident, except the winchman — and his testimony was that there was no sudden dropping of the draft, but as he could not see from his station to the locus of the accident inside the hold of the vessel, his testimony was not conclusive.

It cannot be denied but that if plaintiff's version of the event as set forth in the statement were true, there could be no possible inference of negligence on the part of the winchman. There was proof that plaintiff made this statement to an adjuster, and that it was witnessed by his daughter. Therefore, when the court refused to charge as requested on this proposition it must have created the opinion in the jury's mind that, even though they agreed that the accident occurred in the manner set forth in the statement, nevertheless they were entitled to find that the defendant was negligent. The court's charge amounted, in effect, to saying that this exhibit which contained an admission against plaintiff's interest as to the manner of the happening of the accident, had nothing to do with the case. The judgment and order should, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.