16747

STATE v. GANTT *ET AL.*
(76 S. E. (2d) 674)

432

*Messrs. H. E. McCaskill,* of Conway, and *J. Ralph Gasque,* of Marion, *for Appellants,*

*Messrs. J. Reuben Long, Solicitor,* and *F. A. Thompson,* of Conway, *for Respondent,*

434

May 20, 1953.

PRUITT, Acting Associate Justice.

The appellants were tried and convicted of the crime of murder at the June, 1951, term of the General Sessions Court for Horry County, and sentenced to be electrocuted, as provided by law.

Before the trial the attorneys for the appellants made and argued a motion for a change of venue on the ground that the appellants could not obtain a fair and impartial trial in Horry County.

This motion, after the taking of testimony and hearing arguments, was overruled by his Honor, Judge G. Badger Baker, the Trial Judge, and this refusal is the basis for the first exception on this appeal, but the attorneys for the appellants have not included this matter in any of the questions involved, and it is, therefore, deemed abandoned. However, in view of the seriousness of this case, we have carefully considered the showing made by the appellants, and that made by The State, and no abuse of dis-

cretion is shown. To the contrary, we think the Trial Judge eminently correct in his refusal of the motion.

In the case of *State v. Woods*, reported in 189.S. C. 281, 1 S. E. (2d) 190, 199, Mr. Justice Fishburne, speaking for the court, declared, with reference to the disposal of a motion for a change of venue:

"But aside from this, even had the trial Judge entertained and refused the motion it was within his judicial discretion; and in order to reverse such ruling it would have to appear that he exercised this judicial discretion in an arbitrary manner, which we could not do on the record herein."

The rules of this Court, require that the brief of appellants shall be preceded by a statement of the questions involved, and the appellants having set out in their brief seven questions as embracing all of the exceptions, we shall now consider these questions in the order in which they appear in their brief.

The first question embraces exceptions 1, 2, 3 and 4, which, together, allege error on the part of the Trial Judge during the empannelling of the jury. When the juror, Ernest W. Hucks, was presented and examined he stated, in substance, that he had formed an opinion as to the guilt or innocence of the defendants, this opinion being made up from newspapers, and that it would require evidence to remove this opinion from his mind, but that he could give The State and the defendants a fair and impartial trial, based solely on the testimony to be produced. He further said that he was not conscious of any bias or prejudice for or against the defendants. The court then declared this prospective juror qualified; but upon cross examination by Mr. Gasque, the juror stated that he had expressed this opinion on numerous occasions, and that he had stated what he thought should be done to the appellants if they were found guilty. Upon further questioning by Mr. Gasque and by the court, the court refused, at that time, to dismiss this juror for cause; but later, while the jury was still being

empannelled, the Trial Judge announced that he would stand aside this juror, thus giving the appellants an additional challenge. We do not see how this could possibly have prejudiced the rights of the appellants. Had the Trial Judge stood by his first impression, it was very largely a matter in his discretion, as the juror had stated that, notwithstanding any opinion that he had formed, or any statements that he had made, he could render a verdict based solely upon the evidence adduced at the trial. Certainly, when his Honor later stood this juror aside, thus restoring to the appellants an additional challenge, they are not in position to complain about it.

The second question embraces exceptions 7, 8 and 9, which question the conduct of the Trial Judge in failing to excuse, for cause, the jurors, E. R. McIver and George Magrath. We have carefully considered the record, and the juror, E. R. McIver, stated upon examination that he had formed and expressed an opinion as to the guilt or innocence of the appellants, that it would require evidence to remove this opinion from his mind, but that he though he could give the appellants a fair and impartial trial without being affected in the slightest degree, by this opinion; but based entirely upon the evidence adduced.

Now, the prospective juror, George Magrath, stated under examination that he had formed and expressed an opinion as to the guilt of the appellants, but that it would not require evidence to remove this opinion from his mind, and that he could give The State and the appellants a fair and impartial trial without being affected in the slightest by his opinion. The court declared this juror qualified, and Mr. Gasque said: "swear him".

In the first place, the record shows that although the appellants were entitled to twenty challenges, they exercised only eighteen of them.

In the case of *State v. Hayes,* reported in 69 S. C. 295, 48 S. E. 251, the court, speaking through Mr. Justice Woods, declared:

"The law does not require that a juror should be perfectly free from all impressions and opinions as to the issue. Whether these jurors were indifferent in the cause was for the determination of the circuit judge. The opinion of the court in *State v. Williamson,* 65 S. C. 242, 43 S. E. 671, is decisive of all questions here made as to the impartiality of the jury. But, aside from this, the defendant did not exhaust his peremptory challenges, and therefore is not in a position to avail himself of error in overruling challenges for cause. *State v. McQuaige,* 5 S. C. 429; *State v. Anderson,* 26 S. C. 599, 2 S. E. 699."

We do not see any error on the part of the Trial Judge as charged in the exceptions embraced in question 2.

The third question involves the tenth exception, which is as follows: "His Honor erred in refusing to strike the testimony of the witness, Doris Eliza Benton, as being incompetent and irrelevant to the issues involved." We fail to find anything in the record to support the contention of appellants that the testimony of this witness should have been struck out on the motion of one of the attorneys for the appellants. The motion of Mr. Gasque was to strike out all of the answers of this witness as being incompetent and irrelevant to the issues involved. The testimony of Miss Benton was an essential link in the chain of circumstances. As pointed out by the Solicitor in his brief, Miss Benton testified as to the size, weight and age of the deceased, and the type of work in which he was engaged. She testified that he was a taxi driver, she told when she had seen him last, and about his failure to fill a date with her on the morning after his disappearance. She also identified a watch as being the property of the deceased, this watch having been found on the arm of the appellant, Gantt, when he was arrested in Pennsylvania. We see no merit in the question raised by exception 10, which is embraced in question 3.

The fourth question embraces the eleventh exception, and this exception alleges error on the part of the Trial Judge in refusing to allow appellants'

counsel to question the witness, Leslie A. Haugen, F. B. I. Agent, as to his idea of the Federal Law charging persons with the crime of kidnapping, and as to his knowledge of the Federal Kidnapping Statute. We think the Trial Judge was entirely right in ruling out questions of this nature, and this did not prevent the attorneys for the appellants from asking this witness questions concerning any facts that he knew to exist concerning the case.

It appears from the brief of counsel for appellants that in asking these questions it was desired to bring out any circumstances which may have induced the agents of the Federal Government to think that the deceased was not dead when he was carried across the State line. It does not appear how an answer to the question which was ruled out could possibly throw any light upon this subject. The ruling of his Honor did not, in any wise, prevent the attorneys for the appellants from asking about any questions of fact which they might have wished to ask. This exception is overruled.

The fifth question embraces exceptions 15, 16 and 17. These exceptions allege error on the part of the Trial Judge in admitting evidence of shooting and gun shot wounds on the body of the deceased under the charge contained in the indictment.

The indictment charged that the appellants "with a pistol and blunt instruments did assault, strike, hit, beat, bruise and wound  *  *  * " etc. The confessions made by the appellants stated that the deceased had not only been struck on the head with a pistol but also that he had been shot with the pistol. The testimony of the physicians who performed the autopsy showed that the skull of the deceased contained a large fracture and several bullet holes. Since the indictment charged appellants with having used a pistol and blunt instruments in causing the death of the deceased, and since it also charged that with these they did assault, strike, hit, beat, bruise and wound the deceased, we think the appellants were fully apprised by the indictment that

The State would undertake to prove that the appellants did, with the pistol, assault and wound the deceased, and we think this would include shooting him with the pistol. However, there was ample testimony from which the jury could have concluded that the blow struck with the pistol in Horry County, and independent of the deceased having also been shot with a pistol, resulted in decedent's death.

When we turn to the testimony complained of by the appellants we find that the witness, G. H. Studebaker, testified, at page 149 of the transcript, fully about the bullet wounds before any objection was made by Mr. Gasque. The witness, Dr. L. J. Pace, testified at page 156 about the bullet wounds without any objection on the part of the attorneys for the appellants. The witness, Dr. Thomas, testified at pages 178 and 179 about the bullet holes in the skull without any objection on the part of the attorneys for the appellants, and the witness, Dr. J. A. Sasser, testified at page 191 about the bullet holes without any objection being raised. For all of the reasons herein indicated, these exceptions embraced in question 5 are overruled.

The sixth question embraces exceptions 20, 21, 22 and 23, and is stated by counsel for appellants, as follows:

"Did his Honor err in failing to charge that the State must prove that the deceased was killed in Horry County, South Carolina, or that the mortal wound was inflicted in Horry County, South Carolina?"

The indictment charged that the assault (described in the quotation hereinabove from it) was committed in Horry County and that the victim, quoting again from the indictment, "then and there died", of which there was ample evidence. The appeal record contains no refused request to charge which was pertinent to this question and there was no motion for directed verdict for failure of proof of the facts alleged in the indictment. In a case other than one involving capital punishment this would suffice to dismiss the question, but in a capital case and under the applicable

rule of *in favorem vitae* the record is searched for prejudicial error, whether or not it was the subject of appropriate request, objection or motion in the trial court. Carefully considering the necessarily lengthy charge as a whole, we find no prejudicial error of omission or commission, particularly because it was received by the jury in connection with the allegations of the indictment which no doubt was read to them, and which they, of course, had before them in their deliberations. The jury were not instructed as explicitly upon the point as counsel now contend they should have been. However, they were instructed, in part, as follows:

"Both defendants have plead not guilty. By this plea they placed the burden of proof upon the State of South Carolina to prove their guilt, and to prove it beyond a reasonable doubt. This plea of not guilty allows the defendants, and each of them, the benefit of any and every defense founded upon the evidence or arising out of the evidence.

"Therefore, I charge you at the very outset that the burden is upon the State of South Carolina to prove the guilt of the defendants beyond a reasonable doubt before they, or either of them, can be convicted of murder or of manslaughter.

"They are presumed to be innocent. The defendants come into this court, clothed with the presumption of innocence and this presumption of innocence continues throughout the entire trial of this case unless and until it is removed by evidence satisfying you of their guilt beyond a reasonable doubt."

Further on in his Honor's charge he said:

"It is your duty, it is my duty, in our respective spheres to see to it that the State and the defendants have a fair and impartial trial, remembering that the defendants are entitled to the benefit of each and every and any reasonable doubt on any and every phase of this case. If you have a reasonable doubt as to whether the defendants are, or either of them, are guilty or not guilty, it would be your duty to acquit him or them as the case might be."

The defendants were charged with the murder of Robert Daniel Oliver, a cab-driver, of Myrtle Beach, South Carolina. They signed several confessions regarding the details of the homicide, each of which would show murder in its most sordid aspects, and with revolting details. It appears that the appellants, who were working at different places in Myrtle Beach, stole from the place of business of Mr. Saleeby, for whom Shelton H. Gainey worked, two pistols and started out in the nighttime to steal an automobile; that at about midnight on Saturday, June 25, 1949, they ostensibly employed the deceased to take them in his taxi-cab to another beach in Horry County, South Carolina, not far removed from Myrtle Beach, but that on the way they required deceased to turn into another road. The appellant, Shelton Gainey, signed a confession, dated June 30, 1949, in which he said:

"The driver took us almost to Ocean Drive Beach (which is in Horry County, South Carolina) when he told him to stop. I don't remember just what happened then. He did stop and got out. I remember striking at him and hitting him with a .22 calibre revolver I had in my hand. The driver went to his knees, but I don't think he was unconscious. We then put him into the trunk of the car and locked it. I got behind the wheel and drove back to Myrtle Beach for our grips. We then headed north. I recall going through Mullins, South Carolina, and I believe we got gas there. We talked about what to do with the man. We decided to get away from the beach, and then get rid of the body."

The appellant, Lander Ray Gantt, signed a confession on June 30, 1949, in which he stated:

"The cab-driver drove for a time and then Gainey and I pulled guns on him. We told him to drive off on a side road. We both told him to get out. He got out and while I held a gun on him Tommy searched him. Tommy took his billfold and handed it to me. I took the money out of it. There was about forty or forty-five dollars in it. I took his wrist watch off. Tommy took everything the man had in

his pockets. After we had finished the search Tommy hit the man on the head with a twenty-two revolver. I saw Tommy swing and the gun hit the man and he went down. We both picked the body up and put it into the trunk of the car. The key was in the lock on the trunk door. We locked the door and as I recall it Tommy kept the key. We then went back and picked up our suitcases or grips in the car. Tommy was driving. I don't know the route he took but our plan was to go north. We talked about what to do with the body. We decided to put it out up the road some place, and Tommy said he knew a good place to put it."

The appellants, on June 30, 1949, each signed other written confessions, which include statements practically indentical with those quoted above. Later they made confessions in which they undertook to designate different locations as to where the deceased and the appellants were when the deceased was struck on the head with the revolver.

The badly decomposed body of the deceased was found a short distance from the road about five miles west of Princetown, West Virginia, about seven o'clock on the evening of July 1, 1949, the body being covered with maggots. The appellants were arrested at Rocktown, Pennsylvania, about 9:45 o'clock, p. m., on June 29, 1949, traveling in the taxi-cab of the deceased, and the wrist watch, taken from the deceased, was found on the wrist of the appellant, Gantt.

The autopsy showed a large wound made by some blunt instrument behind the ear of the deceased, which caused a skull fracture, producing a hole in the skull about two to two and one-half inches in diameter, and also several bullet wounds in the face and head.

The several confessions made by the appellants allege that the bullet wounds were inflicted outside of Horry County, and some of them alleged that they were made outside of this State.

Dr. L. J. Pace, who performed an autopsy on the body of the deceased at Princetown, in the State of West Virginia,

testified, regarding the wound made by the blunt instrument, that when he pulled the skin of the head back from the wound the bone fragments fell out, leaving a hole about two to two and one-half inches in diameter, this wound being behind the right ear; that this is one of the most vulnerable spots of the skull, and that this fracture was sufficient to cause death, as well as were the holes caused by bullets. He testified positively that the particular blow behind the right ear was sufficient to cause almost instantaneous death. Drs. J. A. Sasser and Pratt-Thomas performed another autopsy on the body of the deceased at the Roper Hospital, at Charleston, South Carolina, and Dr. Thomas testified, in effect, that the skull had been crushed by some blunt instrument and that a blow in that particular part of the head was sufficient to cause almost immediate death, and that he would remain unconscious until he did die.

Dr. J. A. Sasser, who was assisted by Dr. Thomas, testified that it took approximately two hours to reconstruct the bone fragments that came out of the hole in the skull, and it was his opinion that after receiving such a wound the deceased never moved and never spoke again.

Section 1017 of the 1942 Code provides that where a person is struck within the limits of this State and dies from the wound beyond the limits of the State he shall be subject to indictment, trial and punishment in the County in which the stroke was made.

Section 1018 of the 1942 Code provides that where a person within the limits of this State shall inflict an injury on a person, who at the time is beyond the limits of this State, or where a person beyond the limits of this State shall inflict an injury on a person within the limits of this State, and such injury causes death, in either case the person causing such death shall be subject to be indicted, tried and punished; in the first case, in the County in this State where the person inflicting the injury was at the time when the same was inflicted; and, in the second case in the County in which the injury was received.

Section 1019 of the 1942 Code provides that where a fatal injury is inflicted by a person within the bounds of one County of this State on a person within the bounds of another County, and death shall ensue therefrom, and the party dies in this State, indictment, trial and punishment shall be the same as if the homicide had been committed altogether within the County where the party dies; and where the party dies without the jurisdiction of this State, indictment, trial and punishment shall be the same as if the homicide had been completed in the County where the injury causing death was received.

Section 1020 of the Code provides that when a fatal wound is inflicted in one county and the victim dies thereof in another county the person inflicting such wound may be indicted and tried in either of such counties.

It will thus be seen that where a fatal blow is struck in one county in this State the person inflicting the fatal wound may be tried in said county whether the victim dies in that county or in another county within this State, or in some other State. In other words, the county where the fatal blow was struck is the proper venue for the trial of the person inflicting such fatal wound, whether the victim dies in the same county where the wound was inflicted or in another county, or outside of this State.

The exceptions embraced in the sixth question must, therefore, be overruled.

The seventh question involved, embracing exceptions twenty-five (25) and twenty-six (26), is whether or not the Trial Judge sufficiently covered the right and privilege of the jury to recommend mercy for the appellants and to recommend mercy for one and not the other, if both were found guilty.

We have carefully studied the charge of the Trial Judge and find that there is no merit in this exception. The charge of the court on this point was clear and explicit.

We have also carefully studied the record as a whole in this case and can find no error therein which would war-

rant a reversal. Therefore, for the reasons hereinabove stated, the verdict of guilty and sentence imposed is affirmed.

BAKER, C. J., and STUKES, J., concur.

TAYLOR and OXNER, JJ., dissent.

OXNER, Justice (concurring and dissenting).

I am in accord with the majority opinion in the decision of all questions except that relating to the failure of the Court to submit to the jury by appropriate instructions the question of venue.

Every indictment for murder must contain allegations as to the place of assault and the place of death. *State v. Platt*, 154 S. C. 1, 151 S. E. 206. Not only must these essentials be alleged, but they must be proved. *State v. Rector*, 158 S. C. 212, 155 S. E. 385. In the indictment on which appellants were tried, it is alleged that in Horry County they inflicted upon the body of Robert Daniel Oliver "one mortal wound, of which said mortal wound the said Robert Daniel Oliver then and there died." It will be noted that both the place of· the assault and the place of death were fixed in Horry County. These facts were put in issue by the plea of not guilty interposed by appellants. The burden was upon the State to prove these allegations.

In undertaking to prove the foregoing elements, the State relied largely, if not altogether, upon several confessions obtained from each of the appellants in Pennsylvania. They are conflicting as to the place of the assault and the place of death. From these confessions, when considered in connection with the medical testimony offered by the State, it could be reasonably infered that the deceased was struck in the head with a pistol in Horry County and that the wound there inflicted was sufficient to cause almost instant death. On the other hand, they also reasonably warrant a conclusion that the deceased was alive in the trunk of the car when appellants left South Carolina. Gantt did not testify. The other appellant, Gainey, testified positively that the deceased was both struck with a pistol and shot at Wadesboro, North Carolina. Under this conflicting evidence,

it was for the jury to determine the place of the fatal assault and the place of death.

In the fair and able charge of the trial Judge, there is no reference to the disputed issue of venue. He fully covered all the essential elements of the offense of murder and the jury was carefully instructed that these must be established beyond a reasonable doubt. But so far as the record discloses, during the charge the indictment was not read to the jury, nor was the allegation contained therein with reference to the place of the assault and place of death called to their attention. Nowhere in the charge do I find that the jury was instructed, either directly or by implication, that the burden was upon the State to establish the place of assault and the place of death as alleged in the indictment. The general charge with reference to the crime of murder was insufficient. The locus of a crime is not a part of the crime itself. Where the facts relating to venue are undisputed, an instruction with reference to this aspect of the case is perhaps unnecessary. But here it was a vital issue. It went to the jurisdiction of the Court.

Certain statutes are set out in the majority opinion with reference to the place of trial where a person is assaulted in one county and dies in another county or another state, but as pointed out in *State v. Coleman,* 17 S. C. 473, these statutes did not make any change in the rules of criminal pleading nor, I may add, in the rule that the State must prove the essential allegations contained in the indictment.

It is stated in the brief of counsel for appellants: "Before the Judge charged· the jury, numerous written requests to charge were made and among them was one which requested in substance, that His Honor charge the jury that the State must prove the place of assault and the place of death of deceased." The record does not show that any request to the above effect was made. However, it does show that the Court refused some request made by appellants, but its contents are not disclosed. The language used by one of the attorneys for appellants on a motion for a new trial

rather indicates that he thought that such a request had been made. The fifth ground of the motion for a new trial and the ruling of the Court thereon are as follows:

"Mr. Gasque: Fifth, that his Honor erred in refusing to charge that the State must prove the place of assault and the place of death of the deceased. I might call your attention to the case of *State v. Rector,* 158 S. C. 212, 155 S. E. 385, 386. (reads)

"The Court: Mr. Gasque and Mr. McCaskill, of course there is evidence that the assault was committed in this County sufficient to have caused death. The *Rector case* and all other cases are all based upon both sections of the 1942 Code, the exact Section numbers I don't recall at this particular moment. There is, however, a fifth factual situation, possibly more, which are not questioned by any of those Sections I have referred to except possibly the first Section. Where the origin of the unlawful act or acts resulting in the death of the deceased is determined, under such factual situation, the venue is properly laid in the County where the unlawful act or acts, which finally resulted in the death of the deceased, occurred. I, therefore, overrule that motion."

I think the ruling of the Court indicates a misconception of the issue sought to be raised. Counsel was not contending that there was no evidence to go to the jury in support of the allegation that the assault was made and death resulted in Horry County. The evidence was conflicting on this issue and the question could not have been raised by motion for a directed verdict. It is also true that if the fatal blow was inflicted in Horry County and death resulted in another county or state, venue could be laid in Horry County. But there is no such allegation in the indictment. It fixes both the place of the assault and the place of death in Horry County.

The question as to whether counsel for appellants are correct in stating that they requested the Court to charge the jury on the disputed issue of venue is not material, since

in a capital case we are charged with the duty of carefully scrutinizing the record to see that all rights of the accused have been safeguarded.

The evidence discloses a brutal murder and the overwhelming weight thereof shows that the offense was committed by appellants. The only uncertainty is the locus of the crime. But the enormity of the offense does not relieve us of the responsibility of determining whether there were any errors of law during the course of the trial substantially affecting the rights of appellants. If there were such errors, we have no alternative but to reverse the judgment and order a new trial. In such a case a new trial is granted, not in the exercise of discretion, but in obedience to the command of law.

I am unable to escape the conclusion that the failure to submit to the jury the disputed question of venue constituted prejudicial error. It seems to me that this conclusion is sustained not only by our own decisions but those from other jurisdictions. *People v. Hetenyi,* 227 App. Div. 310, 98 N. Y. S. (2d) 990, affirmed 301 N. Y. 757, 95 N. E. (2d) 819; *State v. Igo,* 108 Mo. 568, 18 S. W. 923; *State v. Brooks,* 136 N. J. L. 577, 57 A. (2d) 34; 23 C. J. S., Criminal Law, § 1196(b).

For the foregoing reasons, I think a new trial should be granted.

TAYLOR, J., concurs.