MOORE v. STATE.

Opinion delivered November 14, 1927.

1. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE.—In a prosecution for selling liquor, based on the testimony of witnesses who remained drunk about five hours after the purchase, the evidence *held* to sustain a conviction.

2. CRIMINAL LAW—JUDICIAL NOTICE—MATTER OF COMMON KNOWLEDGE.—The court will not take judicial notice as to whether it is impossible or even improbable to produce a state of intoxication continuing for five hours from a pint of whiskey drunk by two men, especially bootleg liquor.

3. CRIMINAL LAW—CREDIBILITY OF WITNESSES.—The jury are the sole judges of the credibility of witnesses and of the weight to be given their testimony.

4. CRIMINAL LAW—REFUSAL OF INSTRUCTIONS OTHERWISE COVERED.— Refusal of instructions requested is not error, where they are properly covered both as to substance and form in other instructions given.

5. CRIMINAL LAW—INSTRUCTION AS TO REASONABLE DOUBT.—In a prosecution for selling liquor, instructions that defendant was presumed innocent throughout the trial, and that the State had the burden to prove his guilt beyond reasonable doubt, and that the reasonable doubt was a state of mind in which the jury could not say they felt an abiding conviction, amounting to moral certainty of guilt, *held* proper.

6. CRIMINAL LAW—INSTRUCTION AS TO CREDIBILITY OF WITNESSES.— An instruction relating to the credibility of witnesses that the jury might consider whether the witness was contradicted or corroborated by other facts proved in the case, being general in its terms, and not singling out defendant, was not error.

7. CRIMINAL LAW—CREDIBILITY OF WITNESSES.—A jury in weighing the evidence and passing on the credibility of witnesses may consider whether the testimony of any witness is contradicted or corroborated by other proved facts in the case.

Appeal from Little River Circuit Court; *B. E. Isbell*, Judge; affirmed.

*J. M. Carter* and *B. E. Carter*, for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

Wood, J. The facts are correctly stated by counsel for the appellant as follows: Appellant was indicted and convicted under a charge of selling liquor in Little River County. The indictment was returned at the July term, 1927, of the court. Two witnesses testified, on behalf of the State, that they bought a pint of liquor from the defendant during the overflow of Red River in April, 1927, and that they bought it on the K. C. S. Railway Company's bridge where it crosses Red River, near Index; that they went down to the river from Ogden, Arkansas, about two miles north of the bridge, between three o'clock and four o'clock in the afternoon one day, to see the overflowed river, and walked out on the railroad bridge that crosses the river, and met appellant on the bridge about sixty feet from the north end, and bought the liquor from him at that place on the bridge, and paid him one dollar and fifty cents for it (one of them said $1) and stood there where they bought it, and the two of them drank all of it and threw the bottle away; that they then walked back to Ogden, about two miles, where they lived; that, at that time, Red River was on a big overflow and the water was all over the bottoms from Ogden to the bridge, and they had to walk on the K. C. S. Railway's tracks across the bottoms to the bridge, and that the water was over everything but the railroad dump on which the track was laid, and stood up against the dump; that there was no other way to get to the bridge; that, when they went back to Ogden, they remained there a while, and then dressed and went to Ashdown, about ten miles away, to attend some sort of exercise at the Ashdown High School that night; that, while they were at Ashdown, they procured an automobile, and were riding around that night in Ashdown, and ran into a young lady's automobile, and were both arrested by the Ashdown police and put in jail and kept there over night, and that the officers arresting them asked where they got their liquor which made them drunk,

and they told the officers they got it from the appellant, and that was the way the officers learned who sold them the liquor. They also testified they were drunk when arrested, and that they had drunk no liquor except what they got from the appellant on the bridge. One or both of them testified that they were arrested some time in the night, about eight o'clock.

Appellant denied selling the liquor, and also denied seeing these young men at all on the bridge or elsewhere that afternoon, and introduced as witnesses two young white men, who were members of a section crew on the railroad bridge and the other bridge between the bridge across Red River and Ogden, and they testified that they and this section foreman were at work on the afternoon of the day these two State witnesses swore they went down the railroad track from Ogden to the bridge across the river, and that they were well acquainted with both the State witnesses, and lived at the same place, Ogden, and they did not see either of them on the track or dump that afternoon. Also that Mr. Casey, the section foreman, was with them, and that, at the time of the trial, Casey was at Bloomburg, Texas.

Other witnesses were called, who testified that they were at the bridge that afternoon, and did not see appellant, and also that the railroad company was at the time keeping guards on the Red River bridge for the purpose of keeping people off the bridge, and that no persons were allowed to go out on the bridge. Other witnesses testified that they were planting cotton in the same field with defendant at the time the State witnesses said they bought the liquor from him, and that defendant never left the field or his work at any time that afternoon.

1. One of the grounds of the motion for a new trial is that the verdict is contrary to the evidence. Learned counsel for the appellant contend that the above facts do not constitute any substantial testimony to justify the verdict. Counsel argue that there was no evidence to show that the two State's witnesses were not normal men, and, if so, it was impossible for them to have been

drunk after eight or nine o'clock that night on a pint of liquor which they had bought and drunk between three and four o'clock that afternoon. Counsel appeal to the "knowledge of the common experience of mankind," as possessed by the judges of this court, to uphold their argument that the testimony of the State's witnesses to the above purport is "unworthy of belief, is mythical, and is not substantial testimony on which to base a verdict."

The judges of this court have no "knowledge of the common experience of mankind," as to whether or not it is impossible or even improbable that a pint of liquor, especially *"bootleg liquor,"* drunk by two men between three and four o'clock in the afternoon, would produce in them a state of intoxication or drunkenness which would continue until eight or nine o'clock that night. If this be a subject which expert testimony could make clear in the defense of the appellant, no such testimony was adduced. If such be a physiological fact of science, it might be established by experts having special knowledge of that subject, but it is a matter of which the court could not judicially know. In the absence of testimony to the contrary, the jury was fully warranted in believing the testimony of the witnesses for the State. This is a matter wholly within the province of the jury, as the sole judges of the credibility of the witnesses and the weight to be given their testimony.

2.   Counsel for the appellant insist that the court erred in refusing to grant appellant's prayers for instructions numbered 3, 4, and 5. These, in effect, would have told the jury that the defendant could not be convicted upon suspicion, however strong such suspicion might be; that the defendant was entitled to the presumption of innocence, which was not a mere form, but an essential and substantial part of the law, binding upon the jury, and entitled the defendant to an acquittal, unless the State, which had the burden of proof, established by evidence that the defendant was guilty of the crime as charged beyond a reasonable doubt. These instructions contained correct propositions of law which have been

over and over again announced by this court. But, while announcing in a general way the correct principles of law, they were couched in language more or less argumentative in form, and they were fully covered by instructions numbered 4 and 5, which the court gave, as follows:

"4. The jury are instructed that the indictment is not evidence of the defendant's guilt; that the defendant is presumed innocent and not guilty, as charged in the indictment, and that this presumption follows him throughout the trial, until the jury are constrained to find him guilty, from the evidence in the case, beyond a reasonable doubt; that the burden is upon the State to prove the defendant guilty beyond a reasonable doubt.

"5. The jury are instructed that a reasonable doubt is that state of mind which, after a full consideration and comparison of all the evidence, leaves the minds of the jury in that condition that they cannot say they feel an abiding conviction, amounting to a moral certainty, of the guilt of the defendant. But a reasonable doubt is not a mere captious, possible or imaginary doubt, but is such a doubt as a reasonable man would have in matters of gravest concern to himself, and it must arise out of the evidence in the case."

The above instructions given by the court were correct in form, and gave the defendant the benefit of the presumption of innocence, and of any reasonable doubt the jury might have of the defendant's guilt, from the evidence in the case, expressed in language which is wholly unobjectionable and in substantial conformity with many previous decisions of this court. They also correctly declared that the burden was upon the State to prove the defendant guilty beyond a reasonable doubt.

The court also gave the following instruction:

"3. The jury are instructed that you are the exclusive judge of the evidence and of the credibility of the witnesses and the weight to be given to their testimony. If you believe any witness has willfully sworn falsely to any part of his testimony, you may consider such part

of his testimony as you believe to be true and disregard such parts as you do not believe to be true. And in considering the weight that should be given to the testimony of any witness, you may take into consideration his manner of testifying, his intelligence, his means of knowing the facts to which he testifies, his interest, if any, in the prosecution or defense, the reasonableness or unreasonableness of his testimony, and also whether he is contradicted or corroborated by other facts proved in the case.''

A general objection was urged to the above instruction in the court below, and a special objection is insisted upon here to the concluding words of the instruction, as follows, ''and also whether he is contradicted or corroborated by other facts proved in the case.'' The instruction was general in terms, and applied to the testimony of any witness in the case. It did not single out the defendant and make the language complained of apply only to him. It is a sound principle of law to say that the jury, in weighing the evidence and passing on the credibility of witnesses, may consider whether the testimony of any witness is contradicted or corroborated, as the case may be, by other proven facts in the case. The jury should not be deprived of any proper rule or standard that may enable them to determine whether or not the testimony of any witness is credible, for this is a subject within their exclusive province.

There are no errors in the rulings of the trial court, and its judgment is therefore affirmed.