16996

THE STATE, Respondent, v. RAYMOND FULLER, Appellant

(87 S. E. (2d) 287)

*Messrs. C. Yates Brown, J. C. Mooneyham, L. W. Perrin, Jr., James M. Kirby* and *Edward P. Perrin,* of Spartanburg, *for Appellant,*

*Messrs. J. Allen Lambright, Solicitor,* and *Sam R. Watt,* of Spartanburg, *for Respondent,*

May 4, 1955.

PER CURIAM

The original opinion in this case was filed on August 4, 1954, and thereafter appellant petitioned for rehearing, which was granted for the purpose of reconsideration of his Exception No. 12 only. That opinion is set forth below except insofar as it deals with that exception and with Exception No. 13, which is indirectly involved; and as so set forth it shall stand as the judgment of this court on the issues therein referred to:

The appellant was tried and convicted for murder at the January, 1953, term of the General Sessions Court for

Spartanburg County, and sentenced to death as provided by law. He appeals on fourteen (14) exceptions charging error to the trial court. The attorneys on both sides in their briefs deal with the exceptions in the form of thirteen questions. This Court for convenience adopts these questions.

1. Was the alleged confession of the defendant properly proven to be admissible in evidence?

The record reveals that in the absence of the jury the usual questions as to whether or not the defendant was threatened, intimidated or coerced in any manner; offered or promised anything, any inducement or hope of reward; that he did not have to make a statement, but that if he did such might be used against him, were propounded. Thereafter the Court itself further examined the witness along the same line. When the jury returned, substantially the same examination was made in its presence, whereupon the witness was permitted to testify to the alleged confession.

The Court in its instructions to the jury admittedly charged the law correctly as to confessions. Appellant by this exception primarily complains of the form of the questions propounded, contending that they are leading and merely state a conclusion, rather than the circumstances under which the alleged confession was obtained.

A confession is not admissible unless it is voluntary. It necessarily follows that the burden rests upon the State to show that it was voluntary, and that there is no presumption of law that it was voluntary. *State v. Rogers,* 99 S. C. 504, 83 S. E. 971. We see no objection to the form of the questions propounded. Each question contained a categorical inquiry into a substantive fact necessary to be affirmatively established by the State, before the alleged confession would be admissible as evidence.

The appellant had the right and the opportunity, both in the absence of the jury and in its presence, by either cross-examination or direct testimony, to

question the admissibility of the alleged confession. We are satisfied from the record that the trial Judge carefully protected the rights of the appellant in the admission of the alleged confession and all statements made by him in connection with the offense.

2. Was it proper for the Solicitor to question a ██ witness as to alleged testimony given by another person at a former trial of this defendant upon the same charge?

This exception complains of the cross-examination by the Solicitor of Dr. Samuel R. Kilgore, a witness for appellant, relative to questions propounded as to how he reached his conclusion as to the mentality of appellant.

On direct examination, this witness was asked:

"Q. Did you, in connection with your examination, have psychological tests made under your instructions? A. Yes, sir, I did.

"Q. And who made those tests? A. Mr. J. R. Hallum, our psychologist at the Mental Hygiene Clinic.

"Q. Dr. Kilgore, can you show a comparison between the report of a radiologist to a general practitioner or surgeon, and the report of a psychologist to a psychiatrist? A. Yes, a psychiatrist utilizes psychology testing much as an internist, or a general practitioner utilizes x-rays, radiology studies.

"Q. How would that compare, the accuracy of the psychologist test with the tests of a radiologist? A. In most instances I would say it was at least as reliable, if not more reliable.

"Q. Did you receive a report from the psychologist, Dr. Kilgore? A. I did.

"Q. Will you give us briefly the contents of that report? A. Yes, the first test that I shall report, I believe it was the first one administered, was an I. Q. test being given, the Belvue-Welchsler, and that is our most reliable test for adults. The result in that test gave an I. Q. of 8, which

would mean that he had the learning ability of the average eight to nine year old child. We speak of that as the mental age."

This witness further testified:

"Q. Dr. Kilgore, you recommended that this particular test be made of Raymond Fuller, did you not? A. Yes, sir, I recommended that it be made, based on the history of the head injuries.

"Q. Now, Doctor, under the Court's ruling you cannot disclose any part of the contents of that report, but I would like to ask you, did you receive a report from the party making that test? A. I did.

"Q. If you will, go ahead, Doctor, with your statement of your conclusions. A. My neurological examination revealed no evidence of disease, physical disease of the nervous system. My clinical impression with regard to this man was that he was mentally defective, and not insane. Psychological tests done to check * * *."

It is too well settled to require the citation of authority, that more latitude is allowed on cross-examination than on direct examination of a witness and that the scope of such examination is largely discretionary with the trial court.

The psychologist, Hallum, testified at the former trial of appellant, but was not called as a witness in this trial.

On cross-examination of the witness, Dr. Kilgore, in this trial the Solicitor examined him, over appellant's objection, concerning testimony given by Hallum at the former trial, pertaining to the various tests given appellant by Hallum. It is apparent from the above-quoted testimony, to a considerable extent, the source of the information upon which Dr. Kilgore formed his opinion was psychological tests made under his instructions by Hallum.

The witness having given an opinion as to the mental condition of the appellant, it was proper for the Solicitor to inquire into the source of the information upon which

he based his opinion for the purpose of determining the weight to be given to it.

3. Was it proper for the Solicitor to include in questions employed in cross-examination statements of alleged facts not in evidence?

This exception questions the Solicitor's cross-examination of Dr. Kilgore in reference to questions pertinent to the mental condition of appellant. It appears from the medical testimony that "experience" is a determining factor in arriving at the mental capacity of an individual. In his cross-examination of this witness, the Solicitor asked numerous questions as to "experiences" of appellant, relative to mental capacity. Included in this line of questions was one to the effect that if appellant attended church, would not that be evidence that he knows right from wrong, both morally and legally? At the conclusion of the State's reply testimony, the Solicitor moved the Court to strike this question, as the State had failed to offer any testimony that appellant went to church. This the Court did and instructed the jury to disregard same.

As to the remaining questions, which appellant contends there was no testimony to substantiate, after a careful examination of the record, we are of the opinion that there is testimony and reasonable inferences to be drawn therefrom, that permitted the Solicitor propounding same.

The Court having eliminated the only question which the testimony did not warrant, this exception is without merit.

4 and 5. Did the charge of the trial Judge upon presumption of innocence violate the prohibition of Section 26 of Article 5 of the State Constitution in that it conveyed to the jury his opinion upon the evidence? Did the charge correctly state the law of this State?

The trial Judge in charging the jury stated:

"I charge you, Mr. Foreman and gentlemen of the jury, that it is a cardinal and important rule of the law of evidence

that the defendant in a criminal trial, no matter what the enormity of the charge made against him may be, will always be presumed to be innocent of the crime for which he is indicted until his guilt has been proven by evidence satisfying you of that guilt beyond a reasonable doubt. This presumption of innocence does not cease when you retire, but it accompanies the defendant from the time of his arraignment throughout the trial, and until you have reached a verdict of guilt based upon evidence satisfying you of that guilt beyond a reasonable doubt. Our Supreme Court has said that that presumption of innocence is like a robe of righteousness placed about the shoulders of the defendant, and it remains with him and assigns him to that class, the innocent, until that presumptive robe of righteousness has been stripped from his person by evidence satisfying you of that guilt, of his guilt, beyond a reasonable doubt. So then, Mr. Foreman, that is not a mere legal theory. It is not just a legal phrase, and I say to you that is a substantial right which everyone is entitled to, that is the presumption of innocence, until you are satisfied from the evidence of his guilt beyond a reasonable doubt.'"

The Court further charged:

"The defendant is entitled to any reasonable doubt arising in the whole case, or arising on any defenses that may have been set up by the defendant. If upon the whole case you have a reasonable doubt as to the guilt of the defendant, he is entitled to that doubt and would be entitled to an acquittal. Likewise, if you have a reasonable doubt as to whether or not the defendant has made out his defenses, then he would be entitled to that reasonable doubt. When I use the term 'reasonable doubt' I do not mean by that some whimsical or imaginary doubt. It is not a weak doubt. It is not a slight doubt. But it is a substantial doubt, a doubt for which you can give a reason".

The charge merely states a rule of evidence based upon the presumption of innocence and does not come within

the inhibition of the Constitution. *State v. Philips*, 73 S. C. 236, 53 S. E. 370, 371. This Court in that case disposed of a similar question in the following language: "In properly defining a reasonable doubt, it cannot be successfully contended that the presiding judge charged upon the facts."

The above-quoted charge by the Court correctly states the law of this State and in no way violates the Constitution of South Carolina, which prohibits the trial Judge from charging on the facts.

6. Was the trial Judge in error in charging the law upon the reputation of the defendant when his reputation was not placed in evidence?

While appellant did not place in issue his reputation by offering character witnesses, the record does reveal some evidence of good reputation. When the witnesses, Mr. and Mrs. Coleman, former employers of appellant, were on the stand, appellant's attorneys developed on cross-examination that he was trustworthy, courteous and reliable. All of which went to his good reputation. The trial court instructed the jury as to the law of good reputation. Instead of such portion of the court's charge being prejudicial, it was beneficial to appellant and would under no view of the matter constitute prejudicial error.

7. Did His Honor, the presiding Judge, err in not granting the motion for a change of venue?

The recent case of *State v. Gantt*, 223 S. C. 431, 76 S. E. (2d) 674, reaffirms the law of this State as to such motion. In the absence of a showing of abuse of discretion by the trial Judge in refusing to grant motion for change of venue on ground that defendant could not obtain a fair and impartial trial, this Court will not interfere with trial court's ruling. We find no such showing in this case. *State v. Goodwin*, 127 S. C. 107, 120 S. E. 496; *State v. Francis*, 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133.

8. Was it error for the trial Judge to rule as qualified ■ jurors those who had stated on their *voir dire* that they had formed or expressed an opinion and that it would take some evidence to disabuse their minds of this formed or expressed opinion?

The question has been before this Court numerous times.

In *State v. Williamson*, 65 S. C. 242, 43 S. E. 671, 672, it is said:

"Section 2944, Code 1902, provides the Court, on motion of either party to suit, shall examine any person called as a juror, therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; and further provides that the juror shall be placed aside 'if it appears to the court that the juror is not indifferent in the cause.' Numerous cases from *State v. Dodson*, 16 S. C. [453] 459, to *State v. Robertson*, 54 S. C. [147] 151, 31 S. E. 868, construing the statute, declare that it invests the Circuit Court with exclusive power to determine whether a juror, after examination on his *voir dire*, is indifferent in the cause. Whether a juror is indifferent in the cause is a question of fact which is not reviewable in this court, unless, perhaps, it should appear that the conclusion of the circuit court is wholly without any evidence to support it. In this case, while it is true the jurors, when examined, said they had formed or expressed an opinion as to the guilt or innocence of the accused, and that it would require evidence to remove that impression from their mind, they also declared that they were not conscious of any bias or prejudice for or against either of the defendants, and would decide the case according to the evidence, uninfluenced by such opinion. It cannot, therefore, be said that the conclusion of the circuit court was without *any* evidence to support it. We do not think that any error of law was committed as complained in these exceptions."

While in the instant case several jurors did declare that they had formed an opinion which it would take some evidence to remove, they also declared, as they did in the case above mentioned, that they were free of any bias or prejudice, could give the defendant a fair and impartial trial and would be uninfluenced by any opinion theretofore formed.

More recent cases dealing with this same question are: *State v. Steadman*, 216 S. C. 579, 59 S. E. (2d) 168; *State v. Gantt*, 223 S. C. 431, 76 S. E. (2d) 674.

\* \* \* \*

10. Was it error on the part of the Trial Judge to ▮ fail to charge the jury the law on circumstantial evidence? The State's case was founded upon a purported confession by the defendant made to the sheriff; fingerprints on the shattered glass of the car; a rifle from which ballistics experts testified the bullet taken from the body of the deceased was shot; a compact, watch, purse and other personal items, located for the sheriff by the defendant during the investigation, all of which identified as property taken at the time of the homicide.

In the case of *State v. Gatlin*, 208 S. C. 414, 38 S. E. (2d) 238, 240, likewise a capital case, this Court said:

"But it is contended that the court erroneously failed to instruct the jury respecting circumstantial evidence and the nature and strength of it required for conviction. The argument overlooks the fact that the crime in this case and the identity of appellant were established by direct evidence and the circumstances introduced were merely corroborative. In such a case it is not requisite that the law of circumstantial evidence be charged. *State v. Bunyon*, 137 S. C. 391, 135 S. E. 361; *State v. Rickenbaker*, 187 S. C. 448, 198 S. E. 43."

In this case the State does not rely solely upon circumstantial evidence, wherefore it was not incumbent upon the trial Judge to charge the law of circumstantial evidence.

11. Was it an abuse of discretion for the trial Judge to refuse to segregate the witnesses upon motion in a capital case where the death penalty was being demanded? The exclusion of witnesses from the court room is a matter which rests largely in the discretion of the trial Judge. *State v. O'Neal,* 210 S. C. 305, 42 S. E. (2d) 523; *State v. Ferguson,* 221 S. C. 300, 70 S. E. (2d) 355. It necessarily follows that where there is a manifest abuse of discretion, this Court would not hesitate to correct same. We have carefully examined the record in this respect and we find no such abuse.

12. Did the trial Judge err in refusing the defendant's motion for a mistrial when the Solicitor in argument before the jury attacked the defendant for interposing what he termed to be in effect inconsistent defenses?

That portion of the Solicitor's argument complained of, as disclosed by the record, is:

"We spent time after time here, hour after hour, where they were apparently trying to get you to believe this man was insane and therefore not responsible for his acts. But when counsel comes to address you, they ask you for a verdict recommending him to the mercy of the Court. Yes, it is true that the defendant can interpose a plea of not guilty or a plea of not guilty by reason of insanity, or as many defenses as he might choose, but nevertheless I do say this to you: Why bring all of this testimony about insanity if they are not going to ask you to find a verdict of not guilty by reason of insanity? Of course, His Honor will charge you that law".

At this point counsel for appellant interposed an objection to the Solicitor's remarks and moved the Court for a mistrial. The Court overruled the motion.

We have carefully examined the record in reference to the remarks of the Solicitor and it is our opinion that it was proper for the Solicitor to attack any inconsistencies in the testimony or defenses interposed by the defendant. Especially

is this true in the light of the various verdicts that the jury might possibly return in the case. The jury was to determine whether appellant was guilty of murder, guilty of murder with recommendation to the mercy of the court, not guilty by reason of insanity or not guilty.

\*  \*  \*  \*

The portion of our original opinion hereinbefore set forth excludes the discussion of Questions 13 and 9, which concern Exceptions 12 and 13 respectively; and to these exceptions we now advert.

By Exception 12, appellant contends that the trial judge erred in charging the jury as follows:

"Take into consideration whether or not there has been any contradiction of any material evidence or testimony given by any witness by the testimony of any other witness. Likewise, take into consideration whether or not there has been any corroboration of the testimony of any witness by that of any other witness".

The gist of this exception is that the language just quoted amounted to a charge on the facts, within the prohibition of Article V, Section 26, of the Constitution of 1895.

As the words here complained of should of course be considered contextually, we quote in full that portion of the charge in which they were used:

"As I have told you already several times, and will perhaps repeat as I go on with my charge, that the defendant is entitled to any reasonable doubt arising on the whole case, or arising on any defenses that may have been set up by the defendant. If upon the whole case you have a reasonable doubt as to the guilt of the defendant, he is entitled to that doubt and would be entitled to an acquittal. Likewise, if you have a reasonable doubt as to whether or not the defendant has made out his defenses, then he would be entitled to that reasonable doubt. But, Mr. Foreman and gentlemen of the jury, when I use the term 'reasonable doubt' I do not mean by that some whimsical or imaginary

doubt. It is not a weak doubt. It is not a slight doubt. But it is a substantial doubt, a doubt for which you can give a reason. Now, that may arise out of the testimony you have heard in the trial of this case relevant to the issues that we are trying. It may arise out of the lack of testimony or evidence material to the issues that we are trying. It may arise out of the credit, or it may arise out of the lack of credit that you give to the testimony of any witness or witnesses who have testified in the trial of this case.

"Now, Mr. Foreman and gentlemen of the jury, when I use the term 'credit,' that simply means what witness or witnesses, by his or their testimony, carries to your minds the conviction of the truth in this matter that you are now investigating. In weighing the credit of the testimony of any of the witnesses, take into consideration the manner, the demeanor as they testified on the stand there. Take into consideration whether or not there has been any bias or prejudice, one way or the other if shown by the evidence of any witness who has testified. Has he shown any bias or prejudice either to the State or to the defendant on trial? Take that into consideration. Take into consideration whether or not there has been any contradiction of any material evidence or testimony given by any witness by the testimony of any other witness. Likewise, take into consideration whether or not there has been any corroboration of the testimony of any witness by that of any other witness. Then use your God-given common sense and determine what credit you shall give to the testimony of any witness who has testified in this case."

Proper evaluation of the portion of the charge to ▮ which exception is taken requires also that we view it in the light of the circumstances of the trial (with regard to corroboration or contradiction of witnesses) in which it was received, and presumably considered, by the jury. It appears from the record that the deceased was mortally wounded by a rifle bullet fired through the closed window of an automobile parked at night on a country road.

His companion, a Mrs. Hudgens, testified that the assailant then robbed her of her watch and her pocketbook and made her give him the deceased's billfold, but that she could not identify him beyond the fact that he was dark. In addition to Mrs. Hudgens, the State offered twelve witnesses, to whose testimony we shall briefly refer.

Dr. W. D. Hastings, who first saw the deceased in the automobile outside the emergency entrance of Spartanburg Hospital, whither Mrs. Hudgens had driven after the robbery, testified as to the cause of death. So also did Dr. Charles M. Dale, who performed the autopsy.

B. B. Brockman, the sheriff of Spartanburg County, testified as to the investigation made by him on the night of the shooting, and as to the defendant's confession made about six days thereafter in his presence and that of O. L. Brady, Chief of the South Carolina Law Enforcement Division. Under Sheriff Brockman's testimony there were introduced in evidence a wrist watch and a billfold previously identified by Mrs. Hudgens as having been taken from her by the assailant, and there were identified a man's wrist watch and a rifle. These articles, the witness testified, were, in the course of the confession and in the presence of the witness and Chief Brady, located by the defendant on and near the premises where defendant lived. Sheriff Brockman's testimony was corroborated by that of Chief Brady.

Mr. Troy Steadman, who finger-printed the defendant after his arrest, testified that he delivered to the South Carolina Law Enforcement Division the card on which the fingerprints were impressed, and also the rifle before referred to.

Lieutenant J. F. Faulk, of the identification bureau of South Carolina Law Enforcement Division, testified that in the course of the investigation of the crime he had lifted several fingerprints from the deceased's automobile, including one from the glass of the left front door; that he had compared this print with those of the defendant's fingers taken by Mr. Steadman, and that it was identical with the print of the middle finger of defendant's left hand.

M. N. Cagle, a ballistics technician of South Carolina Law Enforcement Division, identified the bullet taken from the body of the deceased as having been fired from the rifle before referred to.

Mrs. Hattie Lee Strahan, a sister of the deceased, identified the man's wrist watch before referred to as having been the property of the deceased.

Mrs. Gladys Coleman testified that she had known the defendant for about two years and had, a few days before the commission of the crime, loaned him the rifle before mentioned.

In reply to the evidence offered on the part of the defendant, to which we shall later advert, Mr. Grady Coleman, with whom the defendant had worked for several years, and Doctors Carrigan and Burn, of the South Carolina State Hospital, testified to the effect that the defendant, while of a low order of intelligence, was not insane.

The defendant did not take the stand, and only two witnesses testified in his behalf. One of them, a physician, testified that on the night in question, when Mrs. Hudgens came to the Spartanburg General Hospital, she made a statement to him which on her examination in chief she had denied making. The statement referred to had no relation to the crime for which defendant was on trial, and the testimony of this witness was admitted only as bearing on the credibility of Mrs. Hudgens. The only other witness for the defense, Dr. Samuel R. Kilgore, a psychiatrist, testified that his examination of the defendant, made at the request of defense counsel and pursuant to an order of the court, revealed that the defendant had the mental age of an eight year old child, but that he could not say that he was insane. Cf. *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130.

Let us now consider in the light of the foregoing the portion of the charge with which Exception 12 is concerned. In *State v. Rogers,* 1917, 30 Idaho 259, 163 P. 912, 916, it appears that the trial judge charged the jury, in part, as follows:

" 'The court instructs you, as a matter of law, that when the defendant testified as a witness in this case, he became as any other witness, and his credibility is to be tested by, and subject to, the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded his testimony, the jury have a right to take into consideration the fact that he is interested in the result of the trial, as well as his demeanor and conduct upon the witness stand, and during the trial, and whether or not he has been contradicted or corroborated by other witnesses or circumstances'."

In considering the exception relating thereto, Chief Justice Budge, speaking for the court, pointed out that while this charge had no doubt been frequently given by trial courts in that State it was nevertheless erroneous because it singled out the defendant and particularly directed the attention of the jury to his credibility as a witness. In the later case of *State v. Farnsworth,* 1932, 51 Idaho 768, 10 P. (2d) 295, the court found no fault with a charge to the effect that in passing upon the credibility of witnesses a jury may consider, among other things, to what extent their testimony has been corroborated or contradicted by other testimony, because the instruction was general and applied alike to all of the witnesses for the state and for the defendant. Such also was the basis of the decision in *Moore v. State,* 1927, 175 Ark. 391, 299 S. W. 386, sustaining a similar charge.

In the case at bar, it is immaterial that the testimony of the defense witness Dr. Kilgore, unlike that of each of the State's witnesses on the issue of sanity, was uncorroborated, for Dr. Kilgore's testimony at best tended to establish mental subnormality, which is not a defense. In relation to his testimony, therefore, any error in the portion of the charge under consideration was harmless. In its relation to the defendant's failure to testify, however, this part of the charge has given us much concern. Sheriff Brockman's testimony concerning the confession, a most important element of the State's case, was corroborated by

that of Chief Brady; and there was no contradiction of it. We cannot but conclude that the trial judge's instruction to the jury that they should, in weighing the evidence, take into consideration whether or not there had been any contradiction of any material testimony of a witness by the testimony of any other witness, directed the attention to the defendant's failure to testify in contradiction to the testimony just referred to, as surely as if he had mentioned the defendant by name; and that so to instruct was, in the circumstances, prejudicial error. Strengthening us in this conclusion is the fact that the trial judge failed to charge that the defendant's failure to testify should not be considered against him and that no inference of guilt should be implied therefrom. By Exception 13 appellant contends that the trial judge erred in failing to so charge. It does not appear that defense counsel requested such charge or objected to its omission; but that fact is of no consequence here, the death penalty being involved. *State v. Green,* S. C., 86 S. E. (2d) 598.

The State's case was a strong one, and we are not unmindful of the rule, usually applied with regard to admissibility of evidence, that where guilt is conclusively proven by competent evidence and no rational conclusion can be reached other than that the defendant is guilty, judgment of conviction should not be set aside because of insubstantial errors not affecting the result. *State v. Burnett,* S. C., 85 S. E. (2d) 744. But we cannot say that the error here was insubstantial, or that the result was not thereby affected.

Reversed and remanded for new trial.

BAKER, C. J., concurs in result.

STUKES, TAYLOR, OXNER, and LEGGE, JJ., concur.