17173

THE STATE, Respondent, v. RAYMOND FULLER, Appellant
(93 S. E. (2d) 463)

See also 227 S. C. 138, 87 S. E. (2d) 287.

440

*Messrs. C. Yates Brown, J. C. Mooneyham, L. W. Perrin, Jr.* and *Edward P. Perrin,* all of Spartanburg, *for Appellant,*

*Messrs. J. Allen Lambright, Solicitor,* and *Sam R. Watt,* of Spartanburg, *for Respondent,*

June 14, 1956.

TAYLOR, Justice.

The Appellant, Raymond Fuller, was convicted of murder at the June, 1955, Term of the Court of General Sessions for Spartanburg County and sentenced to death as provided by law.

The facts are undisputed. On the evening of August 13, 1952, Appellant, who lived and worked on a dairy farm South of the City of Spartanburg, carrying a borrowed .22 caliber rifle, drove a panel truck approximately five miles to the West side of the Spartanburg Airport and parked in a secluded area. A car appeared, but the driver turned around and left upon seeing the parked truck. Appellant then moved his truck to another location and proceeded by foot to where one Lynn Baxter Moorman and a lady friend were parked in Moorman's car. Appellant, a Negro, wore dark trousers and no shirt or shoes. As he approached the left side of the parked car, Moorman attempted to start the motor; and Appellant broke the glass near the driver with the butt of the rifle and fired one shot into Moorman's head in the area of the left temple, the bullet passing through the brain, causing death at approximately 1:30 A. M., at the Spartanburg General Hospital.

Appellant removed the car keys from the switch and took from the lady a red pocketbook containing a $10.00 bill, her wrist watch and compact. From the deceased, he took a wrist watch and billfold. He then returned the keys to the lady and left, walking back in the direction from whence he had come, entered his truck, and returned to his home where he hid the items at various places about the farm. Upon being confronted with the fact that his fingerprints appeared upon a piece of the broken glass, Appellant related to the officers what had happened, retraced his route, carried them to the farm, and secured from two holes in the ground the parts of

the lady's pocketbook, both watches from a corner of a dairy barn, the deceased's billfold from a feeder flue of another building, and the compact from the sill of a vacant house.

The deceased's billfold when turned over to the officers contained a $50.00 bill, a $20.00 bill, a $2.00 bill, and a $1.00 bill. The officers inquired of Appellant what had become of the $10.00 bill taken from the lady. He explained that the man's pocketbook when taken contained a $50.00 bill, a $10.00 bill, a $2.00 bill and a $1.00 bill; that he had used the $10.00 bill from the man's pocketbook and the one taken from the lady's to change a $20.00 bill. The $1.00 bill had written across the face of it in ink the names of the deceased, L. B. Moorman, and Jack Cantrell.

Upon trial of the case, the defense contended throughout that Appellant is a mental defective to such an extent that he was incapable of malice, and testimony was introduced to the effect that Appellant had an I. Q. of Fifty-eight and a mental age of eight or nine years.

A portion of the testimony of Mr. J. Roderick Hallum, a clinical psychologist for the Spartanburg Mental Health Clinic, who testified for the defense was as follows:

"Q. Now, is there any question in your mind that Raymond Fuller is sane? A. No question, sir.

"Q. No question but what he is sane? A. That's right.

\* \* \*

"Q. Do you think that he can tell right from wrong? A. To the extent, sir, that someone with an I. Q. of fifty-eight, and roughly a mental age of between eight and nine.

"Q. All right. You say a mental age of between eight and nine? A. That's right.

"Q. You mean that a child of the age of eight and nine, or a mental age of eight and nine? A. I am afraid that I don't—

"Q. A child of eight or nine years old, with normal intelligence, is that what you mean? A. In part, sir. But Raymond's intelligence, with a mental age of eight or nine,

is different as I tried to say a while ago, as between someone of Raymond's age of twenty-seven.

"Q. Be quite different from a child eight or nine years of age with normal intelligence, wouldn't it? A. I wouldn't say quite different, sir. I would say that it would be different."

Dr. Samuel R. Kilgore, psychiatrist, also testified for the defense that in his opinion Appellant was sane but that his ability to comprehend and to manage himself was definitely limited.

Dr. E. N. Burn, a psychiatrist at the South Carolina State Hospital, did not agree with the conclusions reached by Dr. Kilgore and Mr. Hallum.

Appellant's exceptions present, according to the brief, the following five questions:

"I. Should the Trial Judge have charged the jury upon criminal responsibility?

"II. Should the McNaghten Rule be replaced?

"III. Should the Trial Judge have charged the jury as requested upon the mental ability of defendant to have malice?

"IV. Was it an abuse of discretion for the Trial Judge to refuse a motion to grant a change of venue?

"V. Is a juror who has formed an opinion that an accused is guilty and who has a fixed opinion as to punishment to be meted out to the accused and whose opinion as to guilt is so fixed that it would take evidence on the part of the accused qualified to serve?"

"* * * Under the law of this state, the test is mental capacity or the want of it sufficient to distinguish moral or legal right from moral or legal wrong, and to recognize the particular act charged as morally or legally wrong." *State v. Jackson,* 87 S. C. 407, 69 S. E. 883, 886; *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130. See also, *State v. Bundy,* 24 S. C. 439; *State v. McGill,* 191 S. C. 1, 3 S. E. (2d) 257. And in *State v. Hawkins,*

121 S. C. 290, 114 S. E. 538, 27 A. L. R. 1083, this Court held that upon trial of a criminal case, the presumption of incapacity to commit crime, arising from the evidence that the defendant had the mentality of one under fourteen years of age, obtains only when it has been shown that the defendant has not lived fourteen years.

This Court reaffirmed the foregoing principle, in the comparatively recent case of *State v. Gilstrap,* 205 S. C. 412, 32 S. E. (2d) 163, 167, stating:

"After mature consideration, we firmly adhere to the rule so forcibly expressed in *State v. Levelle, supra;* and we may add that the doctrine that a criminal act may be excused or mitigated because prompted by an irresistible impulse, where the offender has the mental capacity to appreciate his legal and moral duty in respect to it, has no place in the law."

Appellant also contends that he was deprived of the opportunity of having the jury consider his mental ability as to having wilfully and with malice aforethought taken the life of the deceased as charged in the indictment in that the trial Judge refused to charge as follows:

"The State of South Carolina in this indictment charges the Defendant with murder. Murder is the killing of any person with malice aforethought, either expressed or implied. You will note from this definition, Mr. Foreman and gentlemen of the jury, that one of the principle elements of the crime of murder is that the killing must have been done with malice aforethought. Malice is a term of art, importing wickedness and hatred, and a determination to do what one man knows to be wrong, and without just cause or excuse or legal provocation. In connection with this, I charge you that you may take into consideration whether or not the defendant was mentally capable of having malice. If you should have a reasonable doubt as to whether or not the Defendant had malice at the time of the fatal encounter, it would be your duty to resolve that doubt in his favor."

The Court's instructions to the jury appear in full in the transcript of record and are clear and free from error.

After charging the jury as to the presumption of innocence and defining reasonable doubt, he proceeded to charge as follows:

"* * * Murder is the killing of any person with malice aforethought, either expressed or implied. In order to convict the defendant of murder the State must not only prove that the defendant killed the deceased, but must also show that it was done with malice aforethought, and such proof must be beyond a reasonable doubt.

"Malice is defined as being hatred or ill-will. Malice is wrongful intent to injure another person. It indicates a wicked or depraved spirit intent on doing wrong. Malice is a legal term implying wickedness and excluding a just cause or excuse. The term malice indicates a formed purpose and design to do a wrongful act under the circumstances that exclude any legal right to do it.

"Now, you observe that malice may be expressed or implied. This does not indicate two different types of malice. It merely indicates two different means of proving or establishing malice. The terms do not indicate different degrees.

"I charge you that expressed malice is where a person kills another with a sedate, deliberate mind and formed design, such formed design being evidenced by external circumstances disclosing the inward intention. Malice describes a state of mind and it may be proved by external circumstances, and when proved by external circumstances, we call it expressed malice.

"I charge you that implied malice is presumed from the use of a deadly weapon, or from the wilful, deliberate and intentional doing of an unlawful act without just cause or excuse. If facts are proved sufficient to raise a presumption of malice, such a presumption would be rebuttable, and it is always for the jury to determine from all of the evidence

in the case *whether or not malice has been proved beyond a reasonable doubt.* (Emphasis ours.)

"Now, gentlemen, you will observe in the definition of the term 'murder' there must be malice aforethought. Even though malice must be aforethought, the law does not require that the malice must exist for any appreciable length of time before the commission of the act. However, there must be a combination of the evil intent and of the act producing the result."

We see no error therein. When the charge is taken as a whole, we are of opinion Appellant is not entitled to one more favorable under the decisions of this Court and that questions one, two, and three should be resolved against Appellant's contentions.

The Fourth question imputes error on the part of the trial Judge in refusing Appellant's motion for a change of venue. In the absence of a showing of abuse of discretion by the trial Judge in refusing to grant a motion for a change of venue on the ground that defendant could not obtain a fair and impartial trial, this Court will not interfere with the trial Court's ruling, and we find no such showing in this case. *State v. Goodwin,* 127 S. C. 107, 120 S. E. 496; *State v. Francis,* 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133; *State v. Fuller,* 227 S. C. 138, 87 S. E. (2d) 287.

In the fifth and last question, it is contended that the trial Court erred in not dismissing for cause a prospective juror, W. R. Cox. The prospective juror, upon being examined on his *voir dire,* stated that from newspaper accounts he had formed an opinion as to Appellant's guilt and punishment and that it would take testimony to change this opinion, but he was not conscious of any bias or prejudice for or against Appellant and could give the State and the defendant a fair and impartial trial based upon the evidence.

The question of qualification of a juror has been before this Court many times. Whether a juror is indifferent in a cause is a question of fact and is not

reviewable in this Court unless it should appear that the conclusion of the Circuit Court is wholly without evidence to support it. *State v. Dodson,* 16 S. C. 453; *State v. Robertson,* 54 S. C. 147, 31 S. E. 868; *State v. Steadman,* 216 S. C. 579, 59 S. E. (2d) 168; *State v. Gantt,* 223 S. C. 431, 76 S. E. (2d) 674; *State v. Fuller, supra.* In instant case, the juror stated that he had formed the opinion as to guilt and punishment but was not conscious of any bias and would render a verdict according to the law and evidence; therefore, it cannot be said that the ruling of the trial Judge is without evidentiary support. Appellant exhausted his peremptory challenges before the twelfth man was selected, but there is no contention that any of the jurors subsequently chosen were disqualified or that Appellant was obliged to accept them to his prejudice. This Appellant has been tried and convicted of this charge on three different occasions, and the newspapers have carried various accounts from time to time. To say that only such persons who had never heard or read of this case or formed an opinion thereabout would be qualified to sit as jurors would make it most difficult to acquire a jury of intelligent persons but would tend to confine the selection of a jury from the unlearned and disinterested persons in the community.

Appellant's counsel, appointed by the Court, have served without compensation; and this Court commends them for having represented Appellant in a most commendable manner. They have been successful in securing two new trials and in every respect have discharged the duties imposed upon them by the Court with ability and fidelity, and this Court acknowledges this service with appreciation.

We find no error in the record and are of opinion that the appeal should be dismissed and the judgment of the Circuit Court affirmed, and It Is So Ordered. Affirmed.

STUKES, C.J., OXNER and LEGGE, JJ., and M. M. MANN, Acting Associate Justice, concur.