18532

The STATE, Appellant, v. Joseph L. JOHNSON, Jr., John Mayo Jones and John F. Maybank, Respondents

(149 S. E. (2d) 348)

154

*Arthur G. Howe, Esq., Solicitor,* of Charleston, *for Appellant,*

*Messrs. Ernest F. Hollings* and *Falcon B. Hawkins,* of Charleston, *for Respondent, John Mayo Jones,*

*Messrs. Pritchard, Myers & Morrison,* of Charleston, *for Respondents, Joseph L. Johnson, Jr. and John F. Maybank,*

July 14, 1966.

Moss, Chief Justice.

The respondents were indicted on September 14, 1964, by the Charleston County Grand Jury for (1) rape; (2) assault with intent to ravish; (3) assault and battery of a high and aggravated nature; and (4) conspiracy. The case came on for trial before the Honorable James B. Pruitt, Presiding Judge, and a jury, at the March 1965 term of the Court of General Sessions, and resulted in a verdict of acquittal on March 5, 1965.

Thereafter, on March 8, 1965, the entire jury panel was summoned to appear in court and each juror was examined by the court and the solicitor with reference to whether they had been contacted or communicated with by friends, relatives and acquaintances of the respondents prior to the trial. As a result of the aforesaid hearing, on March 12, 1965, twelve persons were cited by the Court to appear on March 18, 1965, and show cause, if any they could, as to why they should not be held in contempt for unlawfully attempting to influence some twenty-one prospective jurors on behalf of certain of the respondents.

Immediately following the conclusion of the testimony in the contempt proceedings, and before the Court had pronounced any judgment thereabout, the State made an oral motion for "a mistrial of the entire cause" on the ground that in law and in fact there was no jury because of what had happened to the jurors Owens and Traynor which could not have been known at the time they were presented and only subsequently known after the verdict was rendered. Thereafter, on March 22, 1965, the State, by written notice, confirmed the oral notice and motion, to which reference has heretofore been made, and asked the Court "to declare the purported trial heretofore had in said cause to be null and void and of no legal force or effect inasmuch as the jury impaneled therefor did not in law constitute a jury." It was the position of the State that the two members of the jury

heretofore named, through fraud and collusion, received evidence other than that received at the trial, thereby improperly influencing said jurors in their verdict.

The aforesaid motion of the State was denied by the trial judge. He held that both the State and the respondents received a fair and impartial trial by a fair and impartial jury, and we quote from his order the following:

"I find that the jury that heard this case and rendered its verdict was a lawful jury, properly drawn and impanelled and sworn in accordance with the statutes and decisions of the State of South Carolina. At the commencement of the trial I believed each of the juror's statements under oath that they would give a fair and impartial trial. Nothing occurred at the trial or since to change this belief. The hearings in contempt proceedings subsequent to the trial do not indicate any fraud or collusion on the part of the two jurors cited, but rather these jurors exhibited a commendable resistance to such contacts. I observed these two jurors and others closely during the trial of the case. They were attentive and showed serious concern. A full presentment was allowed the State and the Defendants; and, while some may agree and others disagree with the verdict, it can be said that both the State and the Defendants have had ther day in court before a fair and impartial jury—and a lawful one. * * *"

The State has appealed from the aforesaid order upon the following ground:

"In that the Court erred in not ordering another trial because the verdict of acquittal was a nullity and in law no trial was had, when it was discovered for the first time after trial that prior thereto two members of the jury sitting received evidence, other than that received at the trial itself, particularly, when said evidence so received was through the fraud and collusion of persons acting on behalf of the Respondents, and, also, when said jurors and two additional jurors sitting had unlawful and undue influence brought to bear upon them by persons acting on behalf of the Respondents."

The motion of the appellant for a mistrial was based solely upon the alleged undue influence brought to bear upon the jurors Owens and Traynor and the receiving of evidence by them through the fraud and collusion of persons acting on behalf of the respondents. Undue influence with regard to the two additional jurors mentioned in the exception cannot be considered by this Court since that question was not presented to nor passed upon by the trial Judge. *State v. McCrary,* 242 S. C. 506, 131 S. E. (2d) 687. Therefore, we will confine our discussion to the jurors named in the motion.

Prior to the argument of the appeal in this case, the respondents duly moved before this Court to dismiss the appeal on the ground that the State has no right of appeal from a verdict of acquittal. We have held in numerous cases that the State does not have the right of appeal from a judgment of acquittal in a criminal case. *State v. Rogers,* 198 S. C. 273, 17 S. E. (2d) 563; and *State v. McWaters,* 246 S. C. 534, 144 S. E. (2d) 718. However, in *State v. Howell,* 220 S. C. 178, 66 S. E. 701, we held that "[a] verdict of acquittal procured by accused by fraud and collusion is a nullity and does not put him in jeopardy; and consequently it is no bar to a second trial for the same offense." Since the State takes the position that the verdict of acquittal here was the result of fraud and collusion and, in view of our decision in the *Howell case,* we consider the appeal on its merits.

After the verdict of acquittal in this case, the State moved for a "mistrial" on the ground hereinbefore stated. The question arises as to whether the motion so made was proper. The term "mistrial" is aptly applied to a case in which a jury is discharged without a verdict. *Clark v. State,* 170 Tenn. 494, 97 S. W. (2d) 644. A mistrial results where, before a trial is completed and judgment rendered, the trial court concludes that there is some error or irregularity that prevents a proper judgment being rendered,

in which event a mistrial may be declared. A motion for a new trial recognizes a completed trial in which a judgment is rendered. It thus appears that a mistrial and a new trial are not the same thing in name or effect. 66 C. J. S., New Trial, § 1c, page 65. Ordinarily, a motion for a mistrial is ineffective where there is a completed trial and the jury has been discharged. We think the motion of the State for a mistrial was inappropriate and we could affirm the order of the lower court on that basis. However, construing the motion of the State for a mistrial as one for a new trial, the result would be the same.

In this case, upon motion of the State, the trial judge, under a *voir dire* examination of the jurors asked all of them the statutory questions required by Section 38-202 of the Code.

The juror, Charles A. Traynor, on his *voir dire* examination, testified that he was contacted by telephone by a "Mrs. Grace" who lived across the street from him. He was asked to state the conversation he had with Mrs. Grace. He said:

"Yes, sir, about the time I got home from work and she told me I was to be on this case and she didn't get to say much else. I told her I didn't think it was right to talk about it and hung up."

Thereafter, in response to a further question from the court, he testified that despite the conversation that had taken place between him and Mrs. Grace that he could give the State and the defendant a fair and impartial trial and a true verdict render according to the law and the evidence received in the trial. This juror was then presented by the court and accepted by the solicitor and the respondents.

The juror, William F. Owens, Sr., when placed on his *voir dire,* was asked by the court if anyone, including the defendants, their representatives, friends, or a law enforcement officer, or any other person had communicated by any means with him concerning his service as a juror. He an-

swered in the affirmative. In response to further questioning by the trial judge, the juror testified that he was contacted by telephone at his home by a person whose name was "Grace". When asked what such person said to him, his reply was:

"She asked me if I was going to serve on the jury. I told her that I had no idea if I would or would not and I didn't know how she got my name and then I hung up the telephone. She called back and I told my wife to tell her that I was not at home and that's the end of it."

This juror was then asked if despite the telephone call he was conscious of any bias or prejudice for or against the accused or any of them and whether he could give the State and the respondents a fair and impartial trial and a true verdict render according to the law and the evidence. He replied in the affirmative. This juror was presented by the court and accepted by the solicitor and the respondents.

The juror, Charles A. Traynor, testified at the hearing held on March 8, 1965, and confirmed what he said upon his *voir dire* examination but, in addition thereto, detailed a portion of the conversation that he had with Mrs. Grace. He testified that he tried to stop her from talking to him but that she "just went rattling right on and the only thing that she said was that there was a signed statement by the girl that she wanted to drop the case." He testified also that she said there was "some element trying to force the case to the courts". This witness also said "I told her I was going to hang up and that I didn't think we ought to be discussing it. I didn't think it was right, and hung up. That was it." This juror also stated that Mrs. Grace offered to read the affidavit to him but she did not.

The juror, William F. Owens, Sr., testified at the hearing on March 8, 1965, and he then recalled that the person who talked to him over the telephone was "Dottie Grace". He confirmed his *voir dire* testimony and gave some additional details of the conversation. He said that she asked

him if he knew "Mr. Howe" and "if I knew he was politically motivated and I said I didn't know him that well". He testified that when she started to say something about the case coming up that he hung up the telephone but she continued to talk to his wife, apparently over an extension telephone. The juror said that he wouldn't go back to the telephone but Dottie Grace in the conversation with his wife said "she had an affidavit that she would like for me to read and that she would call back". The juror said that she did call back and his wife, pursuant to his instruction, told her that he was not at home and didn't know when he would be home. There is no testimony that this juror ever found out what was contained in the affidavit aforementioned.

It is provided in Section 38-203 of the Code that all ██ objection to jurors, if not made before the juror is impaneled for or charged with the trial of a case shall be deemed waived, and if made thereafter shall be of no effect. The word "objections" used in this section has been held to mean such objections of which the party had knowledge or which, by the exercise of due diligence, he could have known. *State v. Gregory,* 171 S. C. 535, 172 S. E. 692; *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505. Upon a motion for a new trial based upon disqualification of a juror, it is incumbent on the movant to show (1) the fact of disqualification; (2) that such disqualification was unknown before the verdict, and (3) that movant was not negligent in failing to make discovery of the disqualification before verdict, and was not guilty of a lack of due diligence in discovering any disqualification. *Spencer v. Kirby,* 234 S. C. 59, 106 S. E. (2d) 883, and *State v. Rayfield, supra.*

The testimony of the jurors Owens and Traynor on ██ their *voir dire* examination revealed the fact that they had been contacted and communicated with by certain persons concerning their service as jurors in this case. It is the position of the State that what happened as to the jurors Owens and Traynor could not be known at the

time they were presented, and was only known after the rendition of the verdict of acquittal. When these jurors on their *voir dire* examination revealed the fact that they had been contacted and communicated with the State was then aware of a possible disqualification on account thereof. Due diligence required the State, at that time, to request the court to fully interrogate these jurors as to the details of the contacts and communications or to request permission from the court to make such inquiries itself. We have held that the trial judge may, if the circumstances demand it, permit counsel engaged in the cause to examine jurors as to their qualifications. *State v. Britt,* 237 S. C. 293, 117 S. E. (2d) 379. This, the State failed to do, and it cannot now successfully claim that it did not and could not know of the alleged or possible disqualification of these jurors. We point out that this record reveals no contacts or communications with these jurors after they were sworn and if the State had made the same inquiries at the time of the *voir dire* examination that was made following the rendition of the verdict, the matters complained of in the State's motion for a new trial would have been fully known prior to the presentment of these jurors. This failure of the State waived any objections that it may have had as to the qualifications of these jurors.

It has long been settled that Section 38-202 of the Code invests the trial judge with exclusive power to determine the fact of a juror's competence and his decision thereabout may not be reviewed on appeal unless wholly without evidence to support it or error of law. *Elliott v. Black River Electric Cooperative,* 233 S. C. 233, 104 S. E. (2d) 357, 74 A. L. R. (2d) 907. In *State v. Young,* 238 S. C. 115, 119 S. E. (2d) 504, we said:

"* * * The question of the impartiality of the juror is addressed to the discretion of the trial Judge; *State v. Prater,* 26 S. C. 198, 21 S. E. 108; and the scope of inquiry on *voir dire* is within the sound discretion of the Circuit Judge, *State v. Carson,* 131 S. C. 42, 126 S. E. 757; *State v.*

*Nance,* 25 S. C. 168; and he has the exclusive power to determine a juror's competency and a finding on such is not reviewable except for error of law, South Carolina Constitution, 1895, Art. 5, Sec. 4; *State v. Faries,* 125 S. C. 281, 118 S. E. 620. If the question of the indifference of a juror is a mere question of fact, it is not reviewable upon appeal, *State v. Haines,* 36 S. C. 504, 15 S. E. 555; *State v. Robertson,* 54 S. C. 147, 31 S. E. 868; *State v. Fuller,* 229 S. C. 439, 93 S. E. (2d) 463; unless the conclusion of the trial Judge is wholly unsupported by the evidence, *State v. Williamson,* 65 S. C. 242, 43 S. E. 671; *State v. Mittle,* 120 S. C. 526, 113 S. E. 335. If there is evidence, however, tending to support the finding of the juror's competency, there is no error of law, *State v. Faries, supra."*

In this case both jurors unequivocably stated, notwithstanding the fact that they had been contacted and communicated with, that they were not conscious of any bias or prejudice, that they could give both the State and the respondents a fair and impartial trial and render a verdict according to the law and the evidence; therefore, it cannot be said that the ruling of the trial judge was without evidentiary support. *State v. Fuller,* 229 S. C. 439, 93 S. E. (2d) 463. The trial judge has found as a fact that the jurors were qualified and competent. In so holding, he was not guilty of any abuse of discretion or error of law.

The order appealed from is affirmed.

LEWIS and BRAILSFORD, JJ., and T. B. GRENEKER and GEORGE T. GREGORY, JR., Acting Associate Justices, concur.