993 F.2d 1537
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Willie David JOHNSON, Reverend, Petitioner-Appellant,
v.
Parker EVATT; T. Travis Medlock, Respondents-Appellees.
 No. 91-7166.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 29, 1992
Decided: May 26, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Matthew J. Perry, Jr., District Judge. (CA-90-1308-3-OB)
 David Isaac Bruck, Columbia, South Carolina, for Appellant.
 Donald John Zelenka, Chief Deputy Atty. Gen., Columbia, South Carolina, for Appellees.
 Before RUSSELL, HALL, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Defendant Willie Johnson appeals the district court's denial of his habeas petition. We find no error in the denial, and affirm.
 
 
 2
 * Willie Johnson ("Johnson") and Vivian Johnson ("Vivian") met at some point in 1983 and were married two months later. The marriage did not go well and Vivian left Johnson at some point in early 1984 to enter a home for battered women. In mid-September, 1984, Vivian moved from the home into the apartment of a friend, Sylma Feaster.
 
 
 3
 Early in the morning of October 1, 1984, Johnson drove the cab that he operated to Feaster's apartment. When Vivian appeared at the door of the apartment at approximately 2:00 AM to say goodbye to a guest, Kevin Rambert, Johnson shot her in the head, killing her. Johnson was charged with murder and was tried before a jury in South Carolina state court.
 
 
 4
 Johnson admitted killing Vivian, but denied that he had done so with malice. He testified that after he drove to Feaster's apartment and before Vivian appeared at the door of the apartment, he had left the cab to look in the apartment's living room window. He claims that, looking through the window, he saw Vivian and Rambert making love and "freaked out." Overcome by rage, Johnson drew the gun that he had taken with him when he left the cab and shot Vivian when she and Rambert came to the door.
 
 
 5
 Rambert and Feaster testified for the government, however, and offered a very different picture of the events at Feaster's apartment on the night Johnson killed Vivian. Rambert stated that he had met Vivian at some point in late September and that they had a platonic relationship when he came to Feaster's apartment on the evening of September 31, 1984. Rambert testified that he, Vivian, and Feaster spent the evening in Feaster's living room with two of Feaster's children watching a movie. Rambert indicated unequivocally that he and Vivian had no sexual contact at any point during the evening. He was leaving to go home at approximately 2:00 AM and Vivian saw him to the door. Rambert testified that, as he was saying goodbye to Vivian at the door, Johnson appeared in front of the apartment and shot Vivian.
 
 
 6
 Feaster's testimony as to the evening's events corroborated completely the version offered by Rambert. She also offered additional testimony regarding occurrences prior to Vivian's death that were relevant to whether Johnson had killed Vivian with malice. Feaster stated that Johnson continuously harassed Vivian after Vivian had moved in Feaster's apartment, in violation of a family court order restraining Johnson from any contact with Vivian. Feaster testified that Johnson had sat in his car across from her apartment and informed Vivian and her that "I'm going to get you." The government also presented evidence that Johnson had left a note for Vivian which stated, "[b]efore I kill you, it [sic] best [that] I take my life."
 
 
 7
 The jury found Johnson guilty of murder and he was sentenced to life imprisonment. The South Carolina Supreme Court affirmed the conviction and the sentence.
 
 
 8
 After properly seeking post-conviction relief in state court, Johnson filed a habeas petition. He claimed, among other things, that a portion of the state trial judge's jury instructions had unconstitutionally relieved the state of its burden to show malice and that his counsel's failure to object to another portion of the jury instructions constituted ineffective assistance of counsel. The district court, adopting a magistrate's recommendation, rejected both of Johnson's claims and dismissed the petition.
 
 II
 
 9
 Johnson contends that the district court erred in finding that the jury instructions did not unconstitutionally relieve the state of its burden to show malice. He argues that the following sentence in the instructions did so relieve the state:
 
 
 10
 Malice is implied where one intentionally and deliberately does an unlawful act which he or she then knows to be wrong and in violation of his duty to another, and where no excuse or legal provocation appears, and where the circumstances attending the killing show an abandoned heart, a malignant heart, fatally bent on mischief.
 
 
 11
 The Due Process Clause "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." Francis v. Franklin, 471 U.S. 307, 313 (1985). A state court jury instruction is unconstitutional if there is a "reasonable likelihood" that the jury understood the instruction to relieve the state of its burden of persuasion on every necessary element. Boyde v. California, 494 U.S. 370, 380 (1990).
 
 
 12
 To prove malice, the state was required to show three elements: first, that Johnson killed Vivian intentionally; second, that he killed her without legal provocation or excuse; and third, that, in killing her, he acted with "a wicked or depraved spirit." State v. Johnson, 352 S.E.2d 480, 481 (S.C. 1987); State v. Fuller, 93 S.E.2d 463, 466 (S.C. 1956). The quoted portion of the jury instructions states that "malice is implied" if the jury found the following three elements: first, that Johnson intentionally did "an unlawful act;" second, that "no excuse or legal provocation appear[ed];" and, third, that "the circumstances attending the killing show[ed] an abandoned heart, a malignant heart, fatally bent on mischief." Johnson argues that there is a reasonable likelihood that the jury did not understand from the instruction that, to find that Johnson's killing was with malice, they had to conclude that the killing was intentional and unprovoked; instead, he contends, there is a reasonable likelihood that the jury thought that the intent and lack of provocation elements of malice could be satisfied by Johnson's committing any unlawful act intentionally and without provocation. Thus, Johnson asserts, the state was relieved of its burden of showing all of the elements of malice. We reject this argument.[1] What the jury was likely to have understood "unlawful act" to have meant is to be determined by reading it "in the context of the [jury] charge as a whole." Francis v. Franklin, 471 U.S. 307, 315 (1985); Boyde, 494 U.S. at 378. In making this determination, we must bear in mind that "[j]urors d[id] not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might" and that the jurors' "commonsense understanding of the instructions ... [was] likely to [have] prevail[ed] over technical hairsplitting." Id. at 380-81.
 
 
 13
 The trial judge made the following detailed instruction on malice:
 
 
 14
 What is murder by definition? Well murder may be defined as the willful, felonious killing of a human being by a human being with malice aforethought. That malice being either express or implied malice.
 
 
 15
 What is manslaughter? By definition, manslaughter may be defined as the felonious killing of a human being without malice in sudden heat and passion, upon a sufficient legal provocation.
 
 
 16
 So there, as you see, the difference between murder and manslaughter is in the presence or absence of malice, malice being present in murder but not present in manslaughter.
 
 
 17
 Now malice is a word suggesting wickedness, hatred and a determination to do what one knows to be wrong, without just cause or excuse or legal provocation. Malice need not be in the mind of the one doing the killing any particular length of time before the act of killing in order to render the killing murder. If it is present in the mind of the one doing the killing any length of time before the act, then its presence would be sufficient to render the killing murder.
 
 
 18
 Malice is said to be expressed where there is manifest a violent, deliberate intention unlawfully to take away the life of another human being. Malice is implied where one intentionally and deliberately does an unlawful act which he or she then knows to be wrong and in violation of his duty to another, and where no excuse or legal provocation appears, and where the circumstances attending the killing show an abandoned heart, a malignant heart, fatally bent on mischief.[2]
 
 
 19
 The law says that if one intentionally kills another with a deadly weapon the implication of malice may arise . If facts are proven beyond a reasonable doubt sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with such other evidence in the case; and you may give it such weight as you may-as you determine it should receive.
 
 
 20
 Now manslaughter is, as I have already indicated, the unlawful or felonious killing of a human being without malice, in sudden heat and passion, upon sufficient legal provocation. A legal provocation is some act which, either alone or in connection with words or circumstances, is calculated to throw one into a passion.
 
 
 21
 (emphasis added).
 
 
 22
 As shown by the emphasized portions, in all but one of the seven paragraphs the trial judge devoted to explaining malice, including the one in which he used the term "unlawful act," he made very clear that the act that the jury was to examine in order to determine whether Johnson had the malice necessary for murder was the act of killing Vivian. It is simply untenable to suggest, in the face of this repeated emphasis that the jury was to determine whether Johnson had malice in the act of killing, that a single use of the term" unlawful act" was reasonably likely to have led the jury, acting with" commonsense understanding" of its instructions, Boyde, 494 U.S. at 381, to find the elements of malice in acts other than the killing. We, thus, hold that the district court did not err in finding that the instructions did not relieve the state of its burden to prove that he killed Vivian with malice.
 
 
 23
 Once it is established that the jury was not reasonably likely to have found the elements of malice in acts other than the killing, the cases on which Johnson primarily relies, Yates v. Evatt, 111 S.Ct. 1884 (1991), Francis, and Sandstrom v. Montana, 442 U.S. 510 (1979), become obviously inapposite. In each of these cases, the Supreme Court held that a jury instruction unconstitutionally relieved the state of its burden to prove every element of a crime because the instruction directed the jury to presume one element of the offense "upon proof of other elements of the offense." Francis, 471 U.S. at 316 (1985) (emphasis added). In Francis, for example, the jury was instructed to presume intent to kill if the state showed that the defendant had committed the killing. The case at bar is different because the jury was instructed to presume one element of murder, malice, only after the state had met its burden of showing malice; in other words, malice was to be "implied" only if the jury found all the requirements of malice: that Johnson killed Vivian intentionally and without provocation and, in doing so, acted with an"abandoned" and "malignant" heart. Thus, the problem of the state not being required to meet its burden on all elements of the crime simply does not arise in this case.[3]
 
 III
 
 24
 Johnson also contends that the district court erred in holding that his counsel's failure to object to a jury instruction on the sentences for murder and manslaughter did not constitute ineffective assistance of counsel. The jury instruction stated:
 
 
 25
 Should your verdict be "Guilty of Murder" the sentence provided by law is that the defendant may be sentenced to the State Penitentiary for the balance of his natural life. In the event your verdict should be "Guilty of Manslaughter" then the law provides that he would be sentenced to confinement for a period of not less than two nor more than thirty years. And if your verdict should be "Not Guilty" then this defendant would be released immediately.
 
 
 26
 To establish ineffective assistance of counsel, Johnson had to show both that "counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). The district court, accepting the recommendation of the magistrate, found that Johnson's counsel's performance had not been deficient and, even if it had been, Johnson's defense had not been prejudiced by it.
 
 
 27
 Johnson, however, disagrees. He argues that his counsel's performance was deficient in failing to object to this instruction which was plainly erroneous under State v. Brooks, 247 S.E.2d 436, 438 (S.C. 1978), and State v. Huiett, 246 S.E.2d 862, 864 (S.C. 1978). He claims that his counsel's failure to object to the instruction prejudiced his defense because, in light of the testimony about his abusive relationship with his wife, his unlawful carrying of a handgun, and his shooting his wife in the head, jurors were likely to have been concerned about the possibility that he would be released in two years if they only convicted him of manslaughter and, thus, probably ignored their responsibility to find sufficient evidence for malice. We find Johnson's argument to be without merit.
 
 
 28
 We need not make a finding on whether Johnson's counsel's performance was deficient in failing to object to the instruction because the district court did not err in its second finding, that any deficiency in Johnson's counsel's performance was not prejudicial. To establish the necessary prejudice, Johnson had to show that there was a "reasonable probability" that the jury would not have found malice had his counsel objected to the instruction. Strickland, 466 U.S. at 694; Griffin v. Warden, Maryland Correctional Adjustment Center, 970 F.2d 1355, 1357 (4th Cir. 1992). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Three considerations lead us to find that there was not a "reasonable probability" that, had counsel objected to the instruction, the jury would not have found malice.
 
 
 29
 First, the evidence that Johnson's killing was with malice was overwhelming. When Vivian had separated from Johnson, she had initially sought refuge in a home for battered women. Johnson was under a restraining order not to have any contact with her which he had repeatedly violated. Feaster, Vivian's roommate, testified that, before the killing, Johnson had told her and Vivian that "I'm going to get you." In addition, Johnson had recently stated in a note to Vivian, "[b]efore I kill you, it [sic] best [that] I take my life."
 
 
 30
 Second, Johnson's only argument that he had not acted with malice was very weak. He testified that, immediately before the killing, he had looked through the window of Feaster's apartment, had seen Vivian and Rambert making love in the living room, and had "freaked out." However, both Rambert and Feaster testified that Rambert and Vivian had not made love or even had any sexual-type contact; indeed, Feaster and two children had been in the living room with Rambert and Vivian all night. Also, when Johnson left his cab to look in the window, he was carrying his gun, a strong indication that he intended the killing before he looked through the window, although he testified that he always carried his gun when he left his cab.
 
 
 31
 Third, the instruction to which counsel failed to object was unlikely to have affected the jury's deliberations on malice. The instruction indicated that if the jury did not find malice, Johnson "would be sentenced to confinement of a period of not less that two nor more than thirty years." Thus, the instruction did not exaggerate the lightness of the sentence for manslaughter; it only suggested that the sentence would fall in a range from a light sentence, two years, to a heavy sentence, thirty years. While it would have been better for the court not to have given the instruction, we do not believe, in light of the overwhelming evidence against Johnson, that informing the jury that there was some chance that Johnson would be given a light sentence if they failed to find malice was likely to have affected their decision on whether Johnson acted with malice.
 
 
 32
 As a result, we hold that the district court did not err in finding that Johnson's counsel's failure to object to the instruction was not prejudicial and rejecting Johnson's ineffective assistance claim.
 
 IV
 
 33
 For the reasons set forth, we find that the district court did not err in holding that the state court's jury instructions did not relieve the state of its burden to show malice and that the assistance rendered to Johnson by his counsel was not ineffective. Accordingly, we affirm the district court's denial of Johnson's habeas petition.
 
 AFFIRMED
 
 34
 HALL, Circuit Judge, concurring in part and concurring in the judgment:
 
 
 35
 I agree with and join Parts I and III of the majority opinion. On the other hand, I believe that the malice instruction created an unconstitutional mandatory presumption, but that the error was harmless under Brecht v. Abrahamson, 61 U.S.L.W. 4335 (1993). Accordingly, I join only the judgment announced in Part II of the majority opinion.
 
 
 36
 The Due Process Clause "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." Francis v. Franklin, 471 U.S. 307, 313 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); Mullaney v. Wilbur, 421 U.S. 684 (1975).
 
 
 37
 The first question is whether the language of the instruction, in isolation, creates a mandatory presumption. If so, the court should examine the instructions as a whole to determine whether the entire charge explains the infirm instruction "to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption." Francis, 471 U.S. at 315, citing Cupp v. Naughten, 414 U.S. 141 (1973). To survive due process scrutiny, the charge as a whole must clearly explain the infirm instruction. Other instructions that merely contradict, and do not explain, the burdenshifting instruction do not suffice, because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." Francis, 471 U.S. at 322. However, constitutional error in a state trial does not warrant federal habeas relief unless the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht, 61 U.S.L.W. at 4336 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).
 
 
 38
 Johnson's attack on the malice instructions is centered on a single sentence:
 
 
 39
 Malice is implied where one intentionally and deliberately does an unlawful act which he or she then knows to be wrong and in violation of his legal duty to another, and where no excuse or legal provocation appears, and where the circumstances attending the killing show an abandoned heart, a malignant heart, fatally bent on mischief.
 
 
 40
 I think that the first clause of this sentence is, in isolation, plainly unconstitutional, because it is "cast in the language of command." Francis, 471 U.S. at 316. We of course must permit juries to imply facts from other facts, but we run into trouble when we require them to do so.
 
 
 41
 The state relies most heavily on the other clauses in the challenged sentence. The second clause ("no excuse or legal provocation appears") does not help cure the defect, because it does not overcome the commanding language of the first. The final clause, though, simply states the classic definition of malice ("malignant heart, fatally bent on mischief"). If the entire instruction required the jury to find, beyond a reasonable doubt, that the circumstances attending the killing show a "malignant heart, fatally bent on mischief" and then (and only then) is malice implied, I think the instruction would be constitutional. Malice is defined in the final underlined clause; if the jury had to find that the final clause was satisfied beyond a reasonable doubt, it has properly found "malice," and the "is implied" language is not a problem.
 
 
 42
 Is there a reasonable likelihood that a juror would interpret the instruction in a manner that violates the constitution? I think so. Unlike the majority, ante at 4-5, I believe that the instruction can be reasonably read as creating three alternative situations from which malice must be implied. The three clauses are joined by "where ..., and where ..., and where...." It does not say "where ..., and ..., and ...," or, even better, "where you find all three of the following...."
 
 
 43
 A reasonable juror could understand the instruction to require an inference of malice from finding any one (but not all) of the three underlying circumstances proved. Because the first two situations cannot constitutionally carry the mandatory presumption, the instruction is infirm. Moreover, I do not believe that the other parts of the rambling "malice" instructions explained the offending sentence satisfactorily.
 
 
 44
 However, as the majority's convincing account of the overwhelming evidence of malice demonstrates, I think we can say that the improper instruction did not have "substantial and injurious effect or influence in determining the jury's verdict." Hence, I join the judgment affirming the denial of habeas corpus relief.
 
 
 
 [1]
 The concurring opinion finds that the instruction here was unconstitutional under a different theory than that advanced by Johnson. It examines the language of the instruction-"Malice is implied where ..., and where ..., and where ...."-and concludes that there is a reasonable likelihood that the jury understood the instruction"as creating three alternative situations from which malice must be implied."
 We find the concurring opinion's interpretation of the instruction untenable. The concurring opinion determines effectively that "where ..., and where ..., and where ... " may be reasonably understood by the jury as "where ..., or where ..., or where ... " We do not believe that the jury, acting with "commonsense understanding," Boyde, 494 U.S. at 381, was reasonably likely to have understood the instructions in this way. The only "commonsense understanding" of"where ..., and where ..., and where ... " in this instruction is that "[m]alice is implied" only when each of the three requirements were met. Indeed, Johnson concedes this in his brief. He states:
 [U]nder the trial judge's instructions here,[in addition to the first requirement ] the predicate unlawful act had to be committed without provocation [the second requirement] in order to trigger the conclusive presumption of malice....
 The [instruction] also contained a final requirement that "the circumstances attending the killing show beyond a reasonable doubt an abandoned heart, a malignant heart, fatally bent upon mischief [the[ third requirement]." 6350 35 9 (Brief for Appellant at 9-10) (emphasis in original).
 
 
 [2]
 This is the sentence with which Johnson takes issue
 
 
 [3]
 Yates is also distinguishable for an additional reason. The Court in Yates did not hold that the jury instruction before it was unconstitutional; in fact, it expressly stated that the constitutionality of the instruction was not in issue. Yates, 111 S.Ct. at 1892